UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WAYNE SCOVIL, CHRISTY PARSONS, KELLEY NYLUND, CLARENCE MCMULLEN, JR., BRENT BAILEY, HENRY SMITH, DUANE HUMPHREY, and WILLIAM PREBLE, individually and on behalf of all others similarly situated, ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | C.A. No. 1:10-cv-00515-DBH |
| v. ) ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC. d/b/a FEDEX HOME DELIVERY, ) ) ) | |
| Defendant ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
SEEKING INDIVIDUALIZED DISCOVERY OF OPT-IN PLAINTIFFS**

Plaintiffs Wayne Scovil, Christy Parsons, Kelley Nylund, Clarence McMullen, Jr., Brent Bailey, Henry Smith, Duane Humphrey and William Preble (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby OPPOSE the motion of Defendant FedEx to permit individualized discovery of all opt-in plaintiffs to this collective action. The full scale discovery FedEx seeks from the opt-in plaintiffs here would pose an unnecessary burden and would defeat a central purpose of a representative class action such as this. For the reasons stated below, Plaintiffs respectfully request that this Court DENY Defendant's motion.

1

**I.     Introduction**

This case involves claims brought by current and former FedEx pick-up and delivery drivers in Maine for misclassification and failure to pay overtime under the federal Fair Labor Standards Act ("FLSA").[1]  Plaintiffs, on behalf of themselves and all others similarly situated, allege that FedEx misclassified them as independent contractors and denied them overtime pay for hours worked in excess of 40 each week.  The FLSA is a remedial statute; among the law's purposes is to permit relatively low-wage earning employees, whose resources often pale in comparison to their employer, to come together to seek damages for unpaid wages.  The mechanism the FLSA uses to facilitate this remedial purpose is the collective action.  Through a collective action, as the Court has initially certified here, employees can pool their resources and prove their case through the use of representative testimony. See Smith v. Lowe's Home Centers, Inc., 236 F.R.D. 354, 357 (S.D. Ohio 2006).

Defendant FedEx asks this Court to ignore one of the hallmark characteristics of the collective action – the use of representative testimony – and permit it to take full-blown, individualized discovery of each opt-in class members, on top of 8 named plaintiffs, including interrogatories, document requests and 7-hour depositions.  See Reich v. Homier Distr. Co., 362 F.Supp.2d 1009, 1015 (N.D. Ind .2005) ("The individual discovery required ... would destroy 'the economy of scale envisioned by the FLSA collective action procedure.' ").  To permit this level of discovery would not only unreasonably burden and tax the Plaintiffs, in contradiction to the mandates of Rule 26, it would undermine the remedial purposes of the FLSA itself. See Cranney v. Carriage Services, Inc., 2008 WL 2457912, *3 (D. Nev. 2008) ("Permitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the

---

[1]     Plaintiffs also allege, on behalf of themselves and all others similarly situated, claims for unlawful deductions for expenses and failure to pay overtime under Maine law. Plaintiffs intend to file a motion to certify those claims as a class action, pursuant to Fed. R. Civ. P. 23, in the near future.

purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources."); McGrath v. City of Philadelphia, 1994 WL 45162, at *2–3 (E.D.Pa.1994) ("[t]o allow such discovery would only serve to obfuscate the issues and drastically enhance the costs of litigation. Such a result cannot be countenanced.").

As discussed below, federal courts have recognized that whether prior to class certification or after, discovery from opt-in plaintiffs should be limited "except in the rarest of cases." Adkins v. Mid-America Growers, Inc., 141 F.R.D. 466, 468 (N.D.Ill. 1992) This is done to promote the remedial purpose of the statute and to encourage class members to opt-in and assert their rights under the FLSA. Id. ("[t]he use of extensive and complicated interrogatories and depositions by the party opposing the class may debilitate the putative class in such a way as to preclude certification by dissuading class members from continuing to assert their claims.") citing HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 16.05 (Supp. 1989). Limitation of opt-in discovery is particularly appropriate here, where Plaintiffs and class members were all subject to a uniform policy concerning classification, were all required to sign a standard Operating Agreement, all performed pick-up and delivery work, and were all denied overtime pay under a singular policy of Defendant. Expensive and burdensome individualized discovery of all opt-in plaintiffs to this action will be of little benefit where FedEx does not dispute these uniform practices.

Defendant's claim that it needs individualized discovery of every opt-in plaintiff in order to assess the availability of individualized defenses and to determine whether or not class members are similarly situated rings hollow. First, neither of the individualized defenses identified by FedEx – the GVWR of an opt-in plaintiff's vehicle and the number of hours that individual worked over 40 – could conceivably require 25 interrogatories, 25 document requests

and 7 hours of deposition testimony to ascertain. Second, nearly all of the relevant evidence in this case is already available to FedEx. As discovery in this matter thus far has revealed, FedEx maintained extensive files on each class member, including information concerning each driver's: work history, size and scope of route, deductions taken from pay, vehicle used, earnings, and, in most cases, number of hours worked.[2] Furthermore, Defendant has already deposed five named plaintiffs and two opt-in plaintiffs, each of whom drove a vehicle weighing less than 10,001 lbs and are members of the class conditionally certified by this Court. Based on the returns of opt-in forms to date, Plaintiffs don't anticipate an opt-in class of more than 40 individuals. If Defendant takes the full ten depositions permitted by the Court, as its counsel has stated it intends, it will have deposed a sample of 25% of the opt-in class. In light of this, Plaintiffs maintain that the expense and burden of permitting full discovery of each opt-in plaintiff will not be outweighed by the information gained.

For the reasons explained below, Plaintiffs respectfully request that this Court DENY Defendant's motion. Instead, Plaintiffs propose that Defendant be permitted to take a total of 10 depositions of plaintiffs and class members, and that this number include the seven depositions of plaintiffs and opt-in plaintiffs FedEx has already completed in this matter. This will provide Defendant with deposition testimony from at least 10% of the class,[3] a sample size that many courts have approved in similar representative actions under the FLSA. In addition, Plaintiffs propose that Defendants be permitted to provide a questionnaire of no more than 15 questions, written in plain English and able to be understood by someone without a legal education, to be signed under the pains and penalties of perjury, by each opt-in plaintiff. This method would

---

[2] To date, Defendant has produced close to 4 million pages of documents, and through its responses to Plaintiffs' Request to Produce Documents, indicates that it intends to produce more.
[3] The potential class in this case is 97 individuals; if fewer individuals opt-in, 10 depositions will constitute greater than 10% of the class.

4

permit Defendant to discover information concerning Gross Vehicle Weight Rating, hours worked, expenses and route price for each individual opt-in plaintiff.

## II. Argument

### A. Courts Routinely Limit the Scope of Opt-In Discovery in FLSA Actions.

In seeking full discovery from all opt-in plaintiffs, Defendant pushes a bright-line rule that opt-in plaintiffs are no different than any other party in any other case, so there is no reason to limit discovery. This position has been rejected by numerous courts, which have recognized that individualized discovery would undermine the purpose and utility of collective actions. See, e.g., Quinn v. Endo Pharmaceuticals, C.A. No. 1:10-cv-11230-WGY (D. Mass. Oct. 27, 2011), Electronic Order Denying Motion to Compel Discovery of Opt-In Plaintiffs (attached hereto as Exhibit A); Morales v. Farm Foods, Inc., 2010 WL 3447513, *2-*3 (D. Neb. Aug. 27, 2010) (rejecting full discovery as inconsistent with collective actions, ordering discovery of 15 percent of opt-in class); Gentrup v. Renovo Svc., LLC, 2010 WL 6766418 (W.D. Ohio Aug. 17, 2010) (allowing only limited opt-in discovery); Oropeza v. AppleIllinois, LLC, 2010 WL 3034247, *5-*7 (N.D. Ill. Aug. 3, 2010) (recognizing appropriateness of representative discovery and ordering discovery of 18 opt-in plaintiffs in case with over 100 opt-ins); Nelson v. Am. Standard, Inc., 2009 WL 4730166, *3 (E.D. Tex. 2009) (limiting discovery to a sample of randomly selected opt-ins, representing about seven percent of opt-in class); Cranney v. Carriage Servs., Inc., 2008 WL 2457912, *3 (D. Nev. 2008) (limiting individualized discovery to 10 percent of opt-in plaintiffs, noting that "[p]ermitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources"); Nerland v. Caribou Coffee Co., Inc., 564 F. Supp. 2d 1010, 1016 (D. Minn. 2007) (noting the

court had authorized individualized discovery for random selection of opt-in plaintiffs "through completion of questionnaires and a limited number of depositions"); Smith v. Lowe's Home Ctrs., Inc., 236 F.R.D. 354, 357-58 (S.D. Ohio 2006) (limiting depositions and written discovery to a sampling of opt-in class); Reich v. Homier Distr. Co., 362 F. Supp. 2d 1009, 1015 (N.D. Ind. 2005) ("The individual discovery required ... would destroy 'the economy of scale envisioned by the FLSA collective action procedure.'") (citation omitted); Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002) (noting that defendant had been allowed to conduct discovery from about eight percent of the opt-in class).

In limiting opt-in discovery, courts have recognized the risk that defendants will seek to use wide-ranging discovery to discourage plaintiffs from participating in a case. See, e.g., Fast v. Applebee's Int'l, Inc., 2008 WL 5432288, *2 (W.D. Mo. Dec. 31, 2008) (denying motion to compel interrogatory responses from each opt-in plaintiff, noting that court needed to impose limitations "to insure that discovery is not used as a tool to limit or discourage participation in the opt-in class and to advance the efficiency and cost containment objectives of a FLSA actions").

The cases cited by FedEx in support of its motion are unavailing and easily distinguished. In Renfro v. Spartan Computer Svcs. Inc., 2008 WL 821950 (D. Kan. Mar. 26, 2008), the district court reviewed the recommendation of a magistrate judge, which required individualized discovery. Id. at *2-*3. The district court was constrained in its review, because it needed to apply "a more deferential standing which requires the moving party to show that the magistrate judge's order is clearly erroneous or contrary to law." Id. at *1. It is evident from the district court's opinion that the plaintiffs had failed to offer sufficient authority to the magistrate judge in support of their position, and once the magistrate judge exercised his discretion to allow

individualized discovery, the district court was precluded from ruling otherwise. Id. at *3 ("Given the authority which the parties have cited, the Court finds no support for plaintiffs' argument that [the magistrate judge's] order was contrary to law."). In Coldiron v. Pizza Hut, Inc., 2004 WL 2601180 (C.D. Cal. Oct. 25, 2004), cited repeatedly by Defendant, the plaintiffs did not oppose the discovery of opt-ins requested by the defendant. Similarly, in Abubakar v. City of Solano, 2008 WL 508911 (E.D. Cal. Feb. 22, 2008), the plaintiffs conceded that the class members had different jobs with distinct job duties, facts inconsistent with those here. While it is true that the defendant in Brooks v. Farm Fresh, Inc., 759 F. Supp. 1185 (E.D. Va. 1991) was permitted to depose 127 opt-in plaintiffs, those depositions were permitted by the court *prior* to its initial determination that the class members were similarly situated, a procedural step that has already occurred here where the primary duties of the class members are not in real dispute. Finally, Defendant's reliance on Krueger v. N.Y. Tel. Co., 163 F.R.D. 446 (S.D.N.Y. 1995) and Kass v. Pratt & Whitney, 1991 WL 158943 (S.D. Fla. Mar. 18, 1991) is wholly misplaced, as those cases involved a collective action under the ADEA and included allegations against the employer of disparate treatment on the basis of age, claims that require a plaintiff to prove intent and are readily distinguishable from the strict liability standard imposed by the FLSA. Furthermore, In Krueger, the defendant had agreed *not* to depose the entire class (and to, instead, use representative testimony) and to limit written discovery to a written questionnaire focused solely on damages. 163 F.R.D. at 452.

The scope of discovery proposed by FedEx in this case is unwarranted, particularly in light of the time and expense full discovery of up to 97 opt-in plaintiffs will entail, given that all class members performed the same central job duties and were subject to Defendant's uniform policies and procedures regarding classification and payment. See Adkins v. Mid-America

7

Growers, Inc., 143 F.R.D. 171 (N.D. Ill. 1992) (depositions and interrogatories of opt-in plaintiffs not appropriate to determine individual class member's job duties and responsibilities where court had already determined that plaintiffs were "similarly situated."). Recognizing both the remedial purpose of the FLSA and the costs associated with modern litigation, courts have increasingly held that discovery of opt-in plaintiffs in collective actions should be limited, and evidence in such matters presented on a representative basis. See Morales v. Farm Foods, Inc., 2010 WL 3447513, *2-*3 (D. Neb. Aug. 27, 2010); Oropeza v. AppleIllinois, LLC, 2010 WL 3034247, *5-*7 (N.D. Ill. Aug. 3, 2010); Cranney v. Carriage Servs., Inc., 2008 WL 2457912, *3 (D. Nev. 2008). For this reason, Defendant's motion to conduct full discovery of all opt-in plaintiffs should be denied.

**B. Where Defendant FedEx Engaged in a Uniform Policy or Practice With Respect to All Class Members, Individualized Discovery is Not Necessary to Determine Whether Class Members are Similarly Situated.**

Individual discovery of up to 97 opt-in plaintiffs is particularly unnecessary here, where the practices that plaintiffs allege violate the FLSA were applied by FedEx, uniformly, to every member of the class. This is not a case, like those relied upon by Defendant, where class members performed different jobs or were subject to varying policies. See Abubakar v. City of Solano, 2008 WL 508911 (E.D. Cal. Feb. 22, 2008). Rather, Plaintiffs here allege that Defendant's uniform policy of classifying its pick-up and delivery drivers as independent contractors and, as a result, denying them overtime, violates the FLSA. Defendant does not suggest, nor could it, that some of the class members were exempt from these policies or that they were not subject to the conditions contained in the Operating Agreement, as FedEx required every driver to sign that agreement as a condition of their work. As such, individual discovery of opt-in plaintiffs will in no way lead to evidence as to whether or not members of the class are

similarly situated. See Reich v. Southern N.E. Telecomm. Corp., 121 F.3d 58, 68 (2d Cir. 1997) (permitting representative testimony where "the abuse arose from an admitted policy of the employer that was consistently applied.").

### C. Nearly all of the Relevant Evidence Concerning Defendant's Misclassification of the Class is Within the Possession or Control of FedEx.

Defendant insists that individual discovery of each opt-in plaintiff is necessary in light of the multiple factors under the FLSA's economic realities test. Def's Brief at 8-10. What Defendant fails to tell this Court, however, is that much of the relevant information is already with the custody or control of FedEx. As is clear from the written discovery produced by FedEx thus far, Defendant maintained extensive files on each class member, which contain the lion's share of evidence relevant to the economic realities test.[4] These files include: records of conversations between FedEx managers and drivers concerning driver performance and compliance with FedEx practices and policies; records related to the type of vehicle each driver purchased to perform his or her route, maintenance of that vehicle and expenses paid by drivers for uniforms, scanners and other materials related to their work for FedEx; documents showing the length of each driver's service for FedEx; and records related to each driver's work history prior to becoming a driver for FedEx. See Declaration of Sara Smolik ¶¶ 4-5, attached hereto as Exhibit 2. Because drivers were required to get Defendant's approval prior to selling their route, FedEx also has records relating to the sale prices for routes in Maine.

---

[4] The test's factors include: 1) the degree of control exercised by the employer over the worker; 2) the worker's opportunity for profit or loss; 3) the worker's investment in the business; 4) the degree of skill and independent initiative required to perform the work; 5) the permanence or duration of the working relationship; and 6) the extent to which the work is an integral part of the employer's business. Bolduc v. Nat'l Semiconductor Corp., 35 F. Supp. 2d 106, 112 (D. Me. 1998).

Finally, Defendant's suggestion that information related to the individual expenses of each driver is necessary to determine the class members' opportunity for profit and loss reveals a fundamental misunderstanding of the economic realities test itself.  Under the FLSA's test, it is the drivers' *opportunity* for profit and loss, not their annual earnings minus their expenses, as Defendant suggests, that is relevant. See Solis v. Cascom, Inc., No. 3:09-cv-257, slip op. at 10 (S.D. Ohio Sept. 21, 2011) ( "While the alleged employees were free to work additional hours to increase their income, they had no decisions to make regarding routes, or acquisition of materials, or any fact normally associated with the operation of an independent business.") (attached as Exhibit 3).  Thus far, discovery – in the form of Defendant's own documents and consistent deposition testimony – has revealed that FedEx determined the size and scope of each driver's route, that FedEx set the rates at which driver's would be paid for their work and that FedEx set the prices it charged customers for the service the drivers provided. Simply put, individualized discovery will not be required for the parties to put on evidence concerning the economic realities test. As in the mill-run of FLSA cases, representative testimony and evidence in the form of the Defendant's own policies and practices will be sufficient to address the central question of this case.

**D. Evidence relevant to Defendant's Individualized Defenses May be More Efficiently Obtained Without Permitting Full-Blown Discovery of all Opt-In Plaintiffs.**

FedEx contends that individual discovery of each opt-in plaintiff is necessary in order for it to determine whether individual opt-in plaintiffs are appropriately within the class. Specifically, FedEx states that it intends to seek information concerning the GVWR of class members' vehicles and the number of hours per week class members worked. Def's Brief at 7 – 8. Plaintiffs fail to see how Defendant will require full-day depositions, interrogatories and

document requests to ascertain this information. Rather, as Plaintiffs suggest, this information can be easily determined through a simple questionnaire, propounded to each opt-in plaintiff and signed under penalty of perjury. This is consistent with other court rulings on this issue. For example, in Greer v. Challenge Fin. Investors Corp., 2007 WL 1341774 (D. Kan. May 4, 2007), the court granted plaintiffs a protective order, preventing defendant from deposing all of the opt-in plaintiffs where one of defendant's stated reasons for noticing the depositions was to determine whether or not each opt-in plaintiff was properly within the class.

In at least some cases, as Defendant concedes, this information is already available to it. FedEx has records concerning the vehicles driven by the class members, and, in some cases, these records include information confirming the vehicle's GVWR. In addition, for many of the class members, their hours worked may be determined from FedEx's own records, as Defendant required its Home Delivery pick-up and delivery drivers to use scanners, which recorded the time the driver left the terminal in the morning and the time the driver completed his or her last delivery of the day. Simple questions, included in the questionnaire Plaintiffs propose, would provide Defendant with each opt-in plaintiff's estimate of the number of hours worked each week and whatever information that individual has as to his or her vehicle's GVWR. A seven-hour deposition is certainly not the most efficient method of ascertaining that information.

**E. Plaintiffs' Proposal for Managing Discovery of the Class.**

Where federal courts have allowed discovery to be taken from opt-in plaintiffs, such discovery has been limited to satisfy the following requirements: (1) the discovery is not being sought for the purpose of depriving the opt-in plaintiff of his or her class status; (2) the discovery is simple enough that it does not require the assistance of counsel to answer; (3) the discovery meets the standards of Federal Rule of Civil Procedure 26; and (4) the information is not

otherwise available to the defendant.  See Fast v. Applebee's Intern., Inc., 2008 WL 5432288, *2 (W.D.Mo. 2008) (stating that limitations on opt-in discovery "are imposed to insure that discovery is not used as a tool to limit or discourage participation in the opt-in class and to advance the efficiency and cost containment objectives of a FLSA actions."). To that end, Plaintiffs propose that Defendant propound a questionnaire of not more than 15 questions, to be signed under pains and penalties of perjury, to each opt-in plaintiff.

Further, Plaintiffs maintain that FedEx should be limited to a total of 10 depositions of plaintiffs and/or opt-in plaintiffs. This would permit Defendant to depose a representative sampling of *at least* 10% of the total class, a sample size approved by many courts in the FLSA context. See Nelson v. Am. Standard, Inc., 2009 WL 4730166, *3 (E.D. Tex. 2009) (limiting discovery to a sample of randomly selected opt-in plaintiffs, representing about seven percent of the total class); Cranney v. Carriage Services, Inc., 2008 WL 2457912, *3 (D. Nev. 2008) (permitting discovery of a sample of 10% of the opt-in class); Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002) (noting that defendant had been allowed to conduct discovery from about eight percent of the opt-in class). To date, 22 individuals have opted into this litigation, and Defendant has deposed seven of them; that is more than a 30% sample and a more robust representative sample than most courts permit and is certainly sufficient in the context of FLSA litigation.  See In re Tyson Foods, Inc., 694 F.Supp.2d 1372, 1380 (M.D. Ga. 2010) (noting that representative testimony is appropriate where representatives performed substantially similar work to non-testifying plaintiffs). Limiting the total number of depositions is particularly important, in light of the FLSA's remedial purposes and the purpose of the collective mechanism to streamline litigation. As courts and commentators have recognized:

> Depositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity in complex litigation. The judge should manage the litigation so as to avoid unnecessary depositions, limit the number and length of those that are taken, and ensure that the process of taking depositions is as fair and efficient as possible.

Geer v. Challenge Fin. Investors Corp., 2007 WL 1341774 (D. Kan. May 4, 2007) citing MANUAL FOR COMPLEX LITIGATION, FOURTH, § 11.45.

Here, FedEx has, to date, taken seven full-day depositions of plaintiffs and opt-in plaintiffs. Plaintiffs, in response to Defendant's document requests, have provided over 30,000 pages of documents. Defendant has produced more than 4 million documents and indicates that it will continue to produce responsive documents as they are located. Permitting individual discovery of each opt-in plaintiff in this case will needlessly drain the Court's and the parties' resources and unnecessarily extend this litigation without any substantive benefit. For these reasons, Plaintiffs respectfully request that Defendant's motion be denied and that the Court issue a discovery order adopting Plaintiffs' suggestion for handling discovery with respect to opt-in plaintiffs. Such an approach will provide the parties with a fair opportunity to discover relevant evidence while preserving the efficiency the FLSA's collective action mechanism was designed to promote.

### III. Conclusion

For the reasons stated herein, Plaintiffs respectfully request that this Court DENY Defendant's motion. In addition, Plaintiffs ask that this Court enter an order limiting discovery as to opt-in plaintiffs as follows:

1) Defendant shall be permitted to take a total of ten (10) depositions of either named or opt-in plaintiffs, including those depositions Defendant has already conducted;

2) Defendant's further discovery of opt-in plaintiffs shall be limited to a single, written questionnaire, not to exceed 15 questions, and conforming with the four factors set out by the court in <u>Fast v. Applebee's Intern., Inc.</u>, 2008 WL 5432288, *2 (W.D.Mo. 2008).

          Respectfully Submitted,
          WAYNE SCOVIL, CHRISTY PARSONS, KELLEY NYLUND, CLARENCE MCMULLEN, JR., BRENT BAILEY, HENRY SMITH, DUANE HUMPHREY, and WILLIAM PREBLE, individually and on behalf of all others similarly situated, **Plaintiffs**

          By their attorneys,

          /s/ Harold L. Lichten
          Harold L. Lichten, Maine Bar #1559
          Shannon Liss-Riordan
          Sara Smolik
          Lichten & Liss-Riordan, P.C.
          100 Cambridge Street, 20th Floor
          Boston, MA 02114
          (617) 994.5800

          /s/ Donald F. Fontaine
          Donald F. Fontaine Maine Bar #424
          The Law Office of Donald Fontaine
          97 India Street, P.O. Box 7590
          Portland, ME 04112
          (207) 879.1300

Dated:   October 27, 2011

## **CERTIFICATE OF SERVICE**

   I hereby certify that on October 27, 2011, a copy of this document was electronically filed through the Court's CM/ECF system and a copy served, through that system, on all counsel of record.

                /s/ Harold Lichten
                Harold Lichten, Esq.