UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WAYNE SCOVIL, CHRISTY PARSONS, KELLEY NYLUND, CLARENCE MCMULLEN, JR., BRENT BAILEY, HENRY SMITH, DUANE HUMPHREY, and WILLIAM PREBLE, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 1:10-cv-00515-DBH |
| v. | ) ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC. d/b/a FEDEX HOME DELIVERY, | ) ) ) | |
| Defendant. | ) | |

**FEDEX GROUND PACKAGE SYSTEM, INC.'S**
**REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS**
**MOTION SEEKING INDIVIDUALIZED DISCOVERY OF OPT-IN PLAINTIFFS**

Defendant FedEx Ground Package System, Inc. ("FedEx Ground") submits this reply in support of its Motion Seeking Individualized Discovery of Opt-in Plaintiffs ("Motion").

**INTRODUCTION**

In their Opposition to Defendant's Motion ("Opp."), Plaintiffs assert that individualized discovery is not necessary to determine whether class members are similarly situated. Opp. at 8. This assertion is not true. As explained below, FedEx Ground needs substantial individualized discovery in order to demonstrate, among other things, that variations exist among Plaintiffs with respect to the applicable "economic realties" test, which will determine whether Plaintiffs are similarly situated for purposes of this action. Contrary to Plaintiffs' assertion, the records relevant to this inquiry are not in FedEx Ground's possession, and many of the economic realities factors require an inquiry into facts that are contractor-specific, e.g., the extent to which

Plaintiffs invested in, and used initiative and discretion in managing, their businesses.

Plaintiffs' argument is also, for want of a better word, ironic. In arguing for a briefing schedule on their conditional certification motion, Plaintiffs opposed allowing FedEx Ground to conduct significant discovery before responding, noting that FedEx Ground will be able to use discovery in an attempt to decertify the class. Plaintiffs' Response to Defendant's Objection to Scheduling Order (Doc. No. 22), at 2. And in arguing for conditional certification, Plaintiffs repeatedly emphasized the "lenient" nature of the first-stage inquiry, noting that the leniency standard exists because usually little discovery has taken place. Plaintiffs' Motion for Conditional Certification (Doc. No. 25) ("Conditional Certification Motion"), at 6-7. Now Plaintiffs have succeeded in obtaining conditional certification, relying on the "lenient" standard and the lack of discovery. But Plaintiffs still want to deny FedEx Ground the ability to do the discovery it needs to fairly litigate decertification. Indeed the discovery restriction Plaintiffs propose runs afoul of the observation made in one of Plaintiffs' own cases: "fairness dictates the defendants should be permitted to conduct enough discovery to support a motion to decertify the conditionally certified class." *Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, at *3 (D. Nev. June 16, 2008).

Plaintiffs cannot have their cake and eat it too. They cannot hide behind the lenient standard for conditional certification and the lack of discovery forever. Fairness requires that FedEx Ground not have to compete with one hand tied behind its back. The discovery FedEx Ground seeks is necessary; it is not unduly burdensome; and the cases Plaintiffs rely on in their opposition are inapposite.

## I.    Limited Discovery Will Be Insufficient To Determine Whether Plaintiffs Are Similarly Situated

Plaintiffs acknowledge that the "overarching" issue here is the alleged misclassification

of the Plaintiffs as independent contractors. Conditional Certification Motion at 9. And Judge

Hornby has observed that the second stage of the certification process requires an examination of

"the different defenses to which the plaintiffs may be subject on an *individual* basis." *Prescott v.*

*Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010) (emphasis added). Still, Plaintiffs

continue to try to prevent FedEx Ground from mounting a meaningful defense, ignoring that the

applicable economic realities test requires an *individualized examination* of the following six

factors:

> (1) the degree of control exercised by the employer over the worker;
> (2) the worker's opportunity for profit or loss;
> (3) the worker's investment in the business;
> (4) the degree of skill and independent initiative required to perform the work;
> (5) the permanence or duration of the working relationship; and
> (6) the extent to which the work is an integral part of the employer's business.

*See* Decision and Order on Plaintiffs' Motion for Conditional Certification (Doc. No. 52)

("Conditional Certification Order"), at 3 n.3. *See also In re FedEx Ground Package Sys., Inc.,*

*Employment Practices Litig.*, 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009) (noting that the

economic realities test requires the court to make "an *individualized examination* of the multiple

factors relating to each drivers' employment.") (emphasis added).

      In the Opposition, Plaintiffs incorrectly assert that a contractor's expenses are not

relevant to the "opportunity for profit or loss" factor. Opp. at 10. Not so. Many courts have

recognized that the ability of a contractor to efficiently manage his or her expenses is directly

relevant to this factor. *See, e.g., Chao v. Mid-Atlantic Installation Servs., Inc.*, 16 F. App'x 104,

107 (4th Cir. 2001) (noting that a contractor's "net profit or loss" depends "on the business

acumen with which the [contractor] makes his required capital investments in tools, equipment,

and a truck," and observing that contractors can control their profits "by improving their

techniques so that they can service more customers faster."); *Bonnetts v. Arctic Exp., Inc.*, 7 F.

3

Supp. 2d 977, 983 (S.D. Ohio 1998) (noting that the contractor "had the ability to derive and control his profits from driving by minimizing his costs.").  Furthermore, the economic realities test also requires an examination of whether a contractor was able to "maximize his profits through the independent use of his own initiative, judgment, and skill." *Id.*  Such a determination cannot be made through the simple questionnaire proposed by the Plaintiffs, but instead will require questioning contractors on how they ran their businesses.

Similarly, the degree of each contractor's investment in his or her business will also require questioning of each contractor.  How did the contractors handle their maintenance expenses?  How did they finance their vehicles and other equipment?  How much, if anything, did they pay for their route?  *See Dole v. Amerilink Corp.*, 729 F. Supp. 73, 76 (E.D. Mo. 1990) (finding that plaintiffs' investment in the business weighed in favor of independent contractor status where they "spen[t] significant amounts of money on their trucks and tools.").  As noted in FedEx Ground's Motion, moreover, the sales price for routes differed, and contrary to Plaintiffs' allegations, FedEx Ground did not consistently keep records of the price of each route.[1]  Motion at 9.  This information is contractor specific, and representative discovery will not be sufficient.

## II.    Allowing Individualized Discovery Of All Opt-In Plaintiffs Would Not Unduly Burden Plaintiffs Or Counsel

Throughout the Opposition, Plaintiffs argue that individualized discovery would be unduly burdensome.  *See, e.g.,* Opp. at 2.  Nowhere, however, do they explain *why* such individualized discovery would be unduly burdensome in a collective action with an anticipated size of only 40 opt-ins, all of whom to date reside in Maine except one.  Opp. at 4.  As explained

---

[1]    In the Opposition, Plaintiffs argue that FedEx Ground's own records contain the "lions share" of evidence relevant to the economic realities test.  Opp. at 9.  This is simply incorrect.  While FedEx Ground did maintain certain records, much of the information contained in these records is incomplete, as FedEx Ground did not require contractors to provide information such as the sale price of routes, purchase of tools and equipment, employee compensation, the cost of buying or leasing a vehicle, and how drivers managed their routes.

in FedEx Ground's Motion, at 6, individuals who affirmatively opt into a collective action,

unlike absent class members in a Rule 23 action, are considered "party plaintiff[s]."  29 U.S.C. §

216(b).  Those who have elected to participate in this case, moreover, did so knowing that they

might have discovery obligations.  *See* Notice of Pendency of FLSA Collective Lawsuit § 4 ("By

participating in the lawsuit you may be required to respond to written questions, to produce

documents substantiating your claim, and to sit for a deposition or testify at the trial.").

The cases Plaintiffs rely on in their brief are inapposite, as they involve hundreds, and

sometimes thousands, of potential opt-ins, many of whom resided in different states.  *See Fast v.

Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2008 WL 5432288, at *2 (W.D. Mo. Dec. 31,

2008) (over 5,549 opt-ins); *McGrath v. City of Phila.*, No. CIV. A. 92-4570, 1994 WL 45162, at

*1 (E.D. Pa. Feb. 10, 1994) (more than 4,100 opt-ins); *Smith v. Lowe's Home Ctrs., Inc.*, 236

F.R.D. 354, 356 (S.D. Ohio 2006) (more than 1,500 opt-ins); *Nelson v. Am. Standard, Inc.*, Nos.

2:07-CV-10-TJW-CE, 2:08-CV-390-TJW-CE, 2009 WL 4730166, at *1 (E.D. Tex. Dec. 4,

2009) (1,107 opt-ins); *Quinn v. Endo Pharmaceuticals*, C.A. No. 1:10-cv-11230-WGY (D.

Mass. Oct. 27, 2011) (more than 500 opt-ins); *Cranney*, 2008 WL 2457912, at *1-2 (anticipated

opt-in class of more than 450 individuals, with a potential size of up to 2,700, who reside in 31

different states); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1344 (N.D. Ga.

2002) (more than 300 opt-ins); *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1016 (D.

Minn. 2007) (300 opt-ins); *Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2010 WL

3447513, at *1 (D. Neb. Aug. 27, 2010) (296 opt-ins); *Geer v. Challenge Fin. Investors Corp.*,

No. 05-1109-JTM, 2007 WL 1341774, at *1 (D. Kan. May 4, 2007) (248 opt-ins); *Gentrup v.

*Renovo Servs., LLC*, No. 1:07–cv–430, 2010 WL 6766418, at *1 (S.D. Ohio Aug. 17, 2010) (106 opt-ins in 20 states).[2]

Plaintiffs also rely on cases where courts erroneously analyzed discovery issues in light of Rule 23 standards.  *See, e.g., McGrath*, 1994 WL 45162, at *2 ("Although the present case is not a Rule 23 class action, principles of discovery developed in Rule 23 cases apply to this § 216 'class action' by analogy").  Indeed, Plaintiffs cite twice to *Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466 (N.D. Ill. 1992), a case which appears to have actually been certified under Rule 23, and has justly been discredited.  *See Abubakar v. City of Solano*, No. CIV S-06-2268 LKK EFB, 2008 WL 508911, at *2 n.1 (E.D. Cal. Feb. 22, 2008) (distinguishing *Adkins* because it was "actually certified as a class action under Rule 23, which generally prohibits individualized discovery").

## III.   Plaintiffs' Proposal for Managing Discovery of the Class is Flawed

Plaintiffs' proposal that FedEx Ground be limited to ten depositions (including the seven that have already taken place, five of which were of named Plaintiffs, not opt-ins) and a "questionnaire" is arbitrary, unreasonable, and inconsistent with the caselaw.  For one thing, Plaintiffs advance no argument as to why ten of the opt-in Plaintiffs would be representative of the larger group of 40 anticipated opt-ins.  Nor could they.  Given the individualized examination required under the economic realities test factors, it is doubtful that any sample could be "representative."

Further, Plaintiffs provide no logical explanation for the size of the representative sample, other than that the same percentage has been used in other cases with larger opt-in class sizes.

---

[2]   Although courts in these cases did limit discovery to a representative sample due to factors that are not present in this case, many of them notably left the door open for further discovery if necessary.  *See, e.g., Lowe's Home Ctrs., Inc.*, 236 F.R.D. at 358; *Nelson*, 2009 WL 4730166, at *3; *see also Oropeza v. AppleIllinois, LLC*, No. 06 C 7097, 2010 WL 3034247, at *8 (N.D. Ill. Aug. 3, 2010).

Opp. at 4.  Courts have recognized that such reasoning is "fatally flawed as a matter of elementary statistics."  *Rosen v. Reckitt & Colman, Inc.*, No. 91 CIV. 1675 (LMM), 1994 WL 652534, at *3 (S.D.N.Y. Nov. 17, 1994) ("Plaintiffs suggest that the same percentage [of depositions allowed in other cases], say 5%, be permitted here, which would amount to 2 or 3 authorized depositions.  Plaintiffs' argument is fatally flawed as a matter of elementary statistics, because the size of the instant class [49 opt-in plaintiffs] is small.").  And given the relatively small size of the class anticipated here, it is not even possible to formulate a meaningful representative sample.  *See, e.g., Id.* at *3 ("Courts have often been forced to confront the problem of stability of samples from small sets…[I]t is axiomatic in statistical analysis that the precision and dependability of statistics is directly related to the size of the sample being evaluated.") (internal citations and quotations omitted); *see also Gentrup*, 2010 WL 6766418, at *3 (noting that "with only 49 plaintiffs, the court [in *Rosen*] found that because the class was so small, the sample size (with representative discovery) would not have been statistically significant.").

In short, Plaintiffs have proposed no meaningful way to determine a "representative" sample of opt-ins here.  Nor could they, because representative testimony would be inherently unreliable due to the nature of the relevant inquiry and the small size of the opt-in class in this case.

## **CONCLUSION**

For the reasons stated above and in FedEx Ground's Motion, Defendant FedEx Ground respectfully requests that this Court authorize FedEx Ground to conduct individualized discovery, including both written and deposition discovery, of all of the opt-in Plaintiffs in this action.

Dated: November 3, 2011               Respectfully Submitted,


FEDEX GROUND PACKAGE SYSTEM, INC.
By its attorneys,


/s/ James C. Rehnquist
James C. Rehnquist (*pro hac vice*)
Caroline H. Cochenour (*pro hac vice*)
James P. Abely (*pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000 (tel)
(617) 570-1231 (fax)
jrehnquist@goodwinprocter.com
ccochenour@goodwinprocter.com
jabely@goodwinprocter.com

Eric J. Uhl
FISHER & PHILLIPS LLP
400 Congress Street
P.O. Box 7250
Portland, ME 04112-7250
(207) 774-6001 (tel)
(207) 775-6407 (fax
euhl@laborlawyers.com


## CERTIFICATE OF SERVICE

The undersigned counsel certifies that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on November 3, 2011.

/s/ James C. Rehnquist

8