UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WAYNE SCOVIL, *et als.*,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>FEDEX GROUND PACKAGE  )<br>SYSTEM INC., d/b/a FEDEX HOME  )<br>DELIVERY,  )<br>  )<br>  Defendant  ) | 1:10-CV-00515-DBH |

## PRETRIAL DISCOVERY ORDER

Defendant FedEx Ground Package System Inc., d/b/a FedEx Home Delivery, has filed a motion seeking full discovery against every opt-in plaintiff in this collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b) (FLSA). Plaintiffs oppose the motion and propose a far more restricted scope for discovery directed at the opt-in plaintiffs. The matter arises pursuant to the Court's September 29 interim scheduling order, which assigned to Defendant the task of filing a motion to address the scope of opt-in discovery. (Doc. Nos. 57 & 59.) I now grant-in-part and deny-in-part defendant's motion.

### BACKGROUND

In this action, Plaintiffs seek to hold Defendant liable for unpaid overtime pursuant to Maine law, 26 M.R.S. § 664, and the federal Fair Labor Standards Act, 29 U.S.C. § 207, and for unlawful deductions from pay pursuant to Maine law, 26 M.R.S. § 629. They contend that they and certain other current and former contract delivery drivers for Defendant were entitled to overtime compensation but were misclassified by Defendant as independent contractors rather than as employees. They also contend that certain expenses they paid to service their delivery

routes should have been borne by Defendant.  They seek to pursue a "collective action" under the FLSA, 29 U.S.C. § 216(b).

The Court granted Plaintiffs' motion for conditional certification on September 16, 2011, thereby allowing notice to be sent to similarly situated workers so they might "opt into" the collective action.  (Decision and Order on Pl.'s Mot. for Conditional Certification, Doc. No. 52.)[1] The Court's certification for purposes of notice is "conditional" because it is understood that, following discovery, Defendant will contest, and the Court will have to revisit, the question of whether Plaintiffs, including the opt-in plaintiffs who join, are, in fact, similarly situated for purposes of maintaining a collective action for unpaid overtime wages.  (Id. at 2-3.)

The conditionally certified class consists of delivery drivers who worked for Defendant within the State of Maine, subsequent to January 2008, and who were classified as independent contractors, serviced a single route, and serviced that route on a full-time basis in a vehicle weighing less than 10,001 pounds.  The Court conditionally certified that this class is similarly situated based on affidavit testimony from six representative Plaintiffs demonstrating the following commonalities, among others:  provision of delivery services pursuant to a standard Operator Agreement; provision of services on a defined route; mandatory use of a privately-owned truck weighing less than 10,001 pounds; use of prominent FedEx logos on the delivery trucks; use of FedEx uniforms; daily report to a FedEx terminal and terminal manager; common daily duties, including mandatory same-day delivery of all loaded packages; and payment pursuant to common policies and practices.  (Id. at 5-6 & nn.7-9.)

The Court ruled that it was premature to conduct an individualized analysis, at the conditional certification stage, whether Plaintiffs are similarly situated in relation to the multi-factor "economic reality" test that governs the merits of the claim for overtime wages.  (Id. at 3

---

[1] Pending publication.  Available at 2011 WL 4347017, 2011 U.S. Dist. Lexis 105043.

& n.3.)  The economic reality test is designed to determine whether a worker classified as an independent contractor is, in reality, an employee dependent on the business to which he or she renders service.  <u>Speen v. Crown Clothing Corp.</u>, 102 F.3d 625, 632 (1st Cir. 1996).  The test calls for consideration of the following:  1) the degree of control exercised by the employer over the worker; 2) the worker's opportunity for profit or loss; 3) the worker's investment in the business; 4) the degree of skill and independent initiative required to perform the work; 5) the permanence or duration of the working relationship; and 6) the extent to which the work is an integral part of the employer's business.  <u>Bolduc v. Nat'l Semiconductor Corp.</u>, 35 F. Supp. 2d 106, 112 (D. Me. 1998).

An interim scheduling order of September 29, 2011, gives Defendant until March 1, 2012, to file a motion requesting decertification of the FLSA conditional class and established the briefing cycle for the instant discovery motion.  (Doc. No. 57.)  A December 5 conference is presently scheduled to address the potential need to extend deadlines depending on the number of opt-in plaintiffs and the projected course of discovery as of that date.  (Id. at 2-3.)  These deadlines are not changed by the instant order.

The docket presently reflects that, in response to the court-approved notice, plaintiffs' counsel has obtained opt-in forms from roughly 14 individuals.  (See Doc. Nos. 60, 61, 63, 64, 66, 67.)  I conducted a telephone conference on the pending motion on November 14, 2011, in lieu of the oral argument requested by Defendant.  At the conference, counsel represented that they anticipate an opt-in class of between 30 and 40 individuals by the conclusion of the opt-in period.

**DISCUSSION**

Defendant requests leave to conduct full discovery of every opt-in plaintiff. (Def.'s Mot. Seeking Individualized Discovery of Opt-In Pls. at 1, Doc. No. 59.) Defendant argues that discovery is necessary to provide it with the information it needs to support a motion to decertify the class and that individualized discovery is presumptively valid because the opt-in members of the collective action are themselves plaintiffs, unlike involuntary class members in a Rule 23 class action. (Id. at 1-2, 6-7.) Defendant wishes to commence immediately the merits discovery associated with the economic realities test. Defendant maintains that the decertification contest will make much of this information material because the Court will be required to examine the plaintiffs' several "employment settings" and any individualized defenses the Defendant may have against individual plaintiffs. (Id. at 3-5 (collecting cases allowing for individualized discovery of opt-in plaintiffs).) Defendant argues that, certification aside, it has a right to discover whether opt-in plaintiffs have claims that can be substantiated. (Id. at 7.) For example, Defendant notes that the notice describes full-time delivery route drivers, without specifying that the FLSA claim requires proof of weekly hours in excess of 40 in order to generate a right to overtime compensation. (Id. at 7.) Defendant also contends that discovery may exclude certain opt-in plaintiffs based on their trucks' gross vehicle weight ratings. (Id. at 8.) Defendant denies having records capable of answering such a discovery initiative. (Id.) Most critically, says the Defendant, it must be prepared to address each individual plaintiff's claim of employee status, which will necessarily entail "fact-intensive" discovery into the six-factor economic realities test. (Id. at 9.) Defendant observes that the court-approved notice has already warned the opt-in plaintiffs that they may be required to answer written questions, produce documents, and sit for

deposition if they choose to join (id. at 5-6), and Defendant requests leave to pursue all of these discovery initiatives with each and every plaintiff (id. at 10).

Plaintiffs object that full-fledged discovery against every opt-in plaintiff—including seven-hour depositions—"would pose an unnecessary burden and would defeat a central purpose of a representative class action." (Pl.'s Opposition at 1, Doc. No. 62.) They assert a right to advance the collective claim through representative testimony and argue that full-fledged discovery of every opt-in plaintiff would undermine the remedial purpose of the FLSA, would result in a waste of time and resources, and would discourage potential plaintiffs from joining. (Id. at 2-6 (collecting cases in which courts restricted the scope of discovery involving opt-in plaintiffs).) Plaintiffs are skeptical of Defendant's claimed need for individualized discovery, contending that Defendants "maintained extensive files on each class member, including information concerning each driver's: work history, size and scope of route, deductions taken from pay, vehicle used, earnings, and, in most cases, number of hours worked." (Id. at 4.) Plaintiffs do not seek to foreclose all discovery of the opt-in plaintiffs, however. Instead, they propose that Defendant "be permitted to provide a questionnaire of no more than 15 questions, written in plain English and able to be understood by someone without a legal education, to be signed under the pains and penalties of perjury." (Id.)

In Reply, Defendant disputes the idea that discovery will be unduly burdensome, anticipating a class of only 40 opt-in plaintiffs, all but one of whom allegedly reside in Maine. (Def.'s Reply Mem. at 4, Doc. No. 65.) Defendant also disputes the idea that a class of 40 individuals is large enough to allow for meaningful statistical sampling. (Id. at 6-7.)

The Court has not yet determined what the standard for decertification will be. There is little circuit-court guidance on this question and no First Circuit precedent. The Court has noted,

5

however, that the question at the decertification stage will be whether the collective group of plaintiffs are "similarly situated" so that "it is appropriate to continue to permit the case to proceed as a collective action." (Doc. No. 52 at 2-3 (citing fifth and sixth circuit precedent).) Persuasive authorities explain that, at the second stage of the inquiry, discovery will be complete, the Court will have considerably more information upon which to make a factual determination, and the analysis will be more searching than it was at the notice stage. Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006). The analysis will likely entail, among other possible factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." Leuthold v. Destination Am., 224 F.R.D. 462, 467 (N.D. Cal. 2004). Defendants represent that they will additionally tailor their discovery to address certain of the economic realty factors, including how individuals managed the expenses associated with their work, the degree of profit realized, and the degree of business investment. (Def.'s Reply Mem. at 3-4.) Such considerations call for a reasonable degree of individualized discovery running to every opt-in plaintiff, at least where, as here, the group of putative opt-in plaintiffs is not especially large. Compare, e.g., Smith v. Lowe's Home Ctrs., 236 F.R.D. 354, 357-58 (S.D. Ohio 2006) (McCann King, U.S. Mag. J.) (permitting only representative discovery of 90 opt-in plaintiffs where there were 1,500 opt-in plaintiffs). However, allowing Defendant to notice every opt-in plaintiff for deposition or to propound onerous document requests and interrogatories may prove unwieldy, impose excessive burdens on the parties, unfairly dissuade the opt-in plaintiffs from carrying on, and give rise to additional troubles such as motions for discovery sanctions, particularly if the number of opt-in plaintiffs grows significantly. See, e.g., Adkins v. Mid-American Growers, Inc., 143 F.R.D. 171, 173-75 (N.D. Ill. 1992) (reviewing

discovery sanctions recommending the dismissal of certain opt-in plaintiffs for failure to respond to discovery, including deposition notices, and ruling that full-fledged discovery should not have been permitted in the first place).  With these concerns in mind, and in lieu of the oral argument requested by Defendant, I conducted a telephone conference with the parties to refine the scope of discovery authorized by this order.  The following parameters are placed on the scope of Defendant's discovery initiatives directed to the opt-in plaintiffs, without prejudice toward Defendant's ability to request further discovery on a showing of particularized need.

**A.    Written Discovery**

This order does not adopt Plaintiffs' position that Defendant's written discovery be restricted to a specific questionnaire.  Defendant may well wish to tailor their requests to the individual in question and should have the leeway to do so.  For each opt-in plaintiff, Defendant may propound 30 interrogatories, without sub-parts, and one set of requests for production of documents.  Defendant agrees to limit its document requests to 20 requests per opt-in plaintiff.  Past requests on certain plaintiffs have produced, in some cases, burdensome production of a large volume of receipts and invoices.  Defendant agrees to confer with Plaintiffs and to tailor its future requests for production to curtail the production of receipts and invoices.  Defendant will propound the foregoing written discovery by the Thanksgiving holiday.

**B.    Depositions**

Defendant's request for leave to depose all of the opt-in plaintiffs is denied at this time, without prejudice to Defendant's ability to request leave to conduct additional depositions of specific opt-in plaintiffs upon completion of the written discovery initiatives outlined above.  Pending those developments, Defendant remains limited to the 10 depositions authorized in the June 6, 2011, interim scheduling order (Doc. No. 27).

## CONCLUSION

Defendant's Motion Seeking Individualized Discovery of Opt-In Plaintiffs is GRANTED IN PART and DENIED IN PART, as outlined above.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

November 14, 2011                /s/ Margaret J. Kravchuk
                                 U.S. Magistrate Judge