# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| **WAYNE SCOVIL, ET AL.,** | ) | |
| | ) | |
| **PLAINTIFFS** | ) | |
| | ) | |
| **v.** | ) | **No. 1:10-CV-515-DBH** |
| | ) | |
| **FEDEX GROUND PACKAGE** | ) | |
| **SYSTEM, INC.** *d/b/a FedEx* | ) | |
| *Home Delivery,* | ) | |
| | ) | |
| **DEFENDANT** | ) | |

## DECISION AND ORDER ON PLAINTIFFS' MOTION TO CERTIFY CLASS AND DEFENDANT'S MOTION TO DECERTIFY COLLECTIVE ACTION

FedEx Ground Package System, Inc. (FXG[1]) drivers in Maine have brought this lawsuit against FXG.  They challenge FXG's classification of them as independent contractors rather than as employees.  I previously certified, conditionally, a federal Fair Labor Standards Act (FLSA) collective action against FXG.  Discovery is complete.

The drivers have now requested certification of a class action for two Maine statutory claims.  The drivers assert that as a result of the alleged misclassification, FXG violated two Maine statutes that apply to employees, one requiring overtime pay, 26 M.R.S.A. § 664, the other prohibiting certain deductions from employee paychecks, 26 M.R.S.A. § 629.  In turn, FXG has requested that I decertify the federal FLSA collective action.  I note that nowhere in the briefing or the oral argument is there any suggestion that there

---

[1] This is the abbreviation that the parties use.

is a dispute about the number of hours worked or the deductions that were made (presumably all a matter of FXG financial records). After oral argument on July 20, 2012, and applying the rigorous analysis that the First Circuit requires, I **GRANT** the motion to certify a class for the two state law claims. I also **DENY** FXG's motion to decertify the FLSA collective action.

### CLASS CERTIFICATION

The drivers request certification of the following class on their two Maine statutory claims:

> All persons who executed a standard Operating Agreement . . . with FXG and worked full time as delivery drivers in Maine under that agreement at any time between December 12, 2004 and December 12, 2010.

Pls.' Mot. and Mem. in Support of Class Certification at 3 (ECF No. 96).

### ANALYSIS

I apply the criteria of Fed. R. Civ. P. 23(a) and, because the class seeks damages, those of 23(b)(3). Of those criteria, FXG challenges four: numerosity, adequacy of representation by the named plaintiffs, predominance and superiority.

#### *Numerosity*

The class of Maine drivers exceeds 100.[2] Pls.' Mot and Mem. in Support of Class Certification at 10. That satisfies numerosity. I reject FXG's argument that the proceedings to date indicate lack of class interest because the participants in the FLSA opt-in collective action number only in the 20s.

---

[2] Although FXG challenges superiority, it does not challenge the number of individuals included in the class. FedEx's Mem. of Law in Opp'n to Pls.' Mot. for Class Certification at 4, 27, 28 (ECF No. 108).

FedEx's Mem. of Law in Opp'n to Pls.' Mot for Class Certification at 27 (ECF No. 108).  The standards are different—a much longer statute of limitations for the Maine claims, a restrictive weight requirement in the FLSA collective action for the trucks the drivers used, limitation to drivers with a single route in the FLSA collective action, and the attractions of temporary anonymity in a class action.

### Commonality

FXG does not challenge this factor.  The parties agree that liability is determined by whether the drivers are properly treated as employees or independent contractors.  That satisfies commonality, even under the recent Wal-Mart decision.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).  As in General Telephone Co. of Southwest v. Falcon, 457 U.S. 147 (1982), here there is a standard document that drives the relationship, namely FXG's Operating Agreement that all drivers must sign and that defines them all as independent contractors.  Under the predominance analysis below, I will deal with the differences that FXG highlights.

### Typicality

FXG does not challenge this factor.  The named plaintiffs are FXG drivers who signed the FXG Operating Agreement.  Their claims are typical of those of the class of drivers in Maine that they seek to represent.

### Adequacy of Representation

***Lawyers:***  FXG does not challenge the adequacy of class counsel, but I assess it regardless because of Rule 23(g).  I conclude that Harold Lichten of the firm of Lichten & Liss-Riordan, P.C. has extensive experience in class action litigation, employment litigation, and litigation against FXG.  He has

committed himself and his firm's resources to pursuing this lawsuit now for almost two years. Local counsel Donald F. Fontaine has over thirty-five years of experience representing individuals and plaintiff classes in labor and employment actions before the state and federal courts of Maine and the First Circuit. See e.g., Parker v. Wakelin, 123 F.3d 1 (1st Cir. 1997); McCormick v. Festiva Dev. Group LLC, Civ. No. 09-365-P-S, 2010 WL 582218 (D. Me. Feb. 11, 2010); In re Wage Payment Litig., 759 A.2d 217 (Me. 2000).

**Named Plaintiffs:** FXG challenges the adequacy of some of the named plaintiffs. Recently I reviewed the applicable factors in LaRocque v. TRS Recovery Services, Inc., No. 2:11-cv-91-DBH, 2012 WL 2921191 *5-*6 (D. Me. July 17, 2012), and I will not repeat them here.

1. I reject the challenges to credibility of the named plaintiffs. What FXG asserts are inconsistencies between statements and depositions are a matter of interpretation.

2. I also reject the challenges that are based upon asserted inconsistency between what a named plaintiff stated that FXG had the authority to do in monitoring, and his testimony about what he himself actually allowed FXG to do. The two are not necessarily inconsistent.

3. The plaintiffs' lawyer has assured me that the one named plaintiff's (Scovil's) failure to afford discovery was an oversight, now being remedied (his deposition was taken, but he did not provide answers to interrogatories.) Pls.' Reply in Support of Their Mot. for Class Certification at 14 n.17 (ECF No. 119).

4. I do find one named plaintiff inadequate, however. William Preble testified not only that he knew nothing about the complaint and the lawsuit,

4

but he also said that he believed that he was an independent contractor, not an employee, a statement contrary to the very premise of the lawsuit. Preble Dep. at 14-18 (ECF No. 108-2). The plaintiffs' lawyer also added at oral argument that Preble was a class member for only part of the class period because he was not a fulltime delivery driver while he was in Florida.

5. The remaining named plaintiffs have participated in discovery, are sufficiently familiar with the facts of the case, have suffered the same injuries, seek the same relief for themselves as they do for all members of the putative class and there are no alleged conflicts with the interests of the class members. I conclude that they can adequately represent the proposed class.

### *Predominance*

The "central issue" in this case is whether the drivers are properly classified as independent contractors, as FXG's Operating Agreement says, rather than FXG employees. FedEx's Mem. of Law in Opp'n to Pls.' Mot. for Class Certification at 1 (ECF No. 108). That issue alone will determine liability.

Whether common issues predominate will depend upon Maine law, because the plaintiffs rely upon two Maine statutory provisions for liability. The predominance question therefore is what the plaintiffs must prove to establish liability under Maine law. Those two statutory provisions give their protection only to "employees." One of them defines that term; the other does not.

Section 629, the prohibited deduction statute, has no definition for the term "employee," and the parties have found no Law Court case that addresses who is an employee for purposes of this section. The plaintiffs say that

employment status here should be determined by the "right to control," which they also call the common law right to control test, Plaintiffs' Motion and Memorandum in Support of Class Certification at 17, 18; FXG says that Maine's "common law test" is pertinent, FedEx's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification at 6 n.3.

For the overtime statute, section 664, there is a statutory definition in section 663 of both "employ" and "employee," but neither party discusses these definitions.[3]  The plaintiffs argue that for section 664, the term "employee" should be determined by the "economic realities" test, based upon a reference to that test in Director of Bureau of Labor Standards v. Cormier, 527 A.2d 1297, 1299-1300 (Me. 1987).   But Cormier is hardly a definitive pronouncement.   The Law Court there was dealing with the meaning of "employer," not the defined term "employee."   It said, accurately, that there is no statutory definition for the term "employer."   Moreover, what the Law Court said—that in determining whether two entities were joint employers, "[t]he trial court committed no error in examining the economic realities of the Cormier-related corporate and partnership entities and determining based on that examination that those entities acted as one employer for purposes of enforcing section 664," Cormier, 527 A.2d at 1300—is a slim reed upon which to conclude that the economic realities test determines the definition of *employee*,

---

[3] Section 663 (which expressly applies to the subchapter of which the overtime statute is part), defines "employ" as "to suffer or permit to work," and defines "employee" as "any individual employed or permitted to work by an employer."   26 M.R.S.A. § 663.   There are certain enumerated exclusions not pertinent to this case.

particularly in light of other cases that I discuss below.[4]  For its part, FXG says that the test for who is a section 664 employee "is unsettled," FedEx's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification at 6 n.3, but that, for purposes of its opposition to certification, it will accept the plaintiffs' proposal.

In order to decide the certification motion, I need to determine what factors will determine—at trial or on summary judgment—who is an employee under each of these two statutory provisions, because they provide protection to employees, not to independent contractors.   Only by knowing with some assurance what the relevant factors are can I properly apply the Rule 23 predominance requirement.[5]  As I have said, the parties have found only one Law Court decision, <u>Cormier</u>, that deals with section 664 overtime, and no Law Court case that has interpreted section 629.   Cases that do address the distinction between employee and independent contractor status arise out of statutory law, namely the Workers Compensation Act and section 626 (requiring that employees be paid promptly at the end of their employment); insurance contracts; and tort law concerning agent responsibility.

I start with section 626 because, like sections 629 and 664, it appears  in the Employment Practices chapter (Chapter 7) of Title 26, Maine's Labor and Industry code.  (Sections 626 and 629 appear in the same subchapter, Wages and Medium of Payment, whereas section 664 appears in the Minimum Wages

---

[4] In <u>Cormier</u>, the Law Court did not even list what the economic realities factors were.
[5] Thus, I cannot rely upon FXG's stipulation that a particular test applies when the stipulation is limited to the certification dispute.  If at trial I concluded that a different test applied, I might find that certification had been improvident.

subchapter.)  Section 626 has its own definition of "employee."  It means "any person who performs services for another in return for compensation, but does not include an independent contractor."  26 M.R.S.A. § 626.  That is not a particularly helpful definition, and not very different from section 663's definition for a section 664 employee as "any individual employed or permitted to work by an employer," where "employ" in turn is defined as "to suffer or permit to work."  In determining who is a section 626 employee rather than an independent contractor, the Law Court uses the eight-factor common law right-to-control test.  Marston v. Newavom, 629 A.2d 587, 590-91 (Me. 1993) (the "'right to control' test" "is the proper test"[6]); accord Taylor v. Kennedy, 719 A.2d 525, 527-28 (Me. 1998) (listing the eight common law factors and stating that "[t]he most important factor is the right to control" for determining section 626 employee status).[7]  As I describe below, Workers Compensation cases also use this eight-factor test to determine who is an employee, as do insurance and torts cases.

---

[6] Marston said that there was no definition of "employee" at the time, because the definition, added in 1991, did not apply retroactively to the activity in Marston, which occurred in 1989-90.  Marston v. Newavom, 629 A.2d 587 at n.5.

[7] Earlier, in determining whether a particular physician was an "employee" of a hospital for purposes of section 626, Knoppers v. Rumford Community Hospital, 531 A.2d 1276 (Me. 1987), the Law Court—in a divided decision—relied upon "the sound principle of statutory construction that absent a legislative definition, the term 'employee' 'must be given a meaning consistent with the overall statutory context, and  be construed in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation.'"  Id. at 1278.  Because of some complex legislative history concerning section 626 and its predecessor statute's omission of hospitals from covered employer liability, the Law Court concluded in Knoppers that there was never a legislative intent to include the "hospital/physician employment relationship" within section 626.  Id. at 1279.  Instead, the Law Court concluded that section 626 "was intended to apply to working people who are dependent upon full and regular wage payments to meet their weekly needs."  Id. at 1280.  The dissent faulted the Court's legislative history, and said that the common law right-to-control test should determine employment status.  Id. at 1281-82.  The cases in text seem to have limited Knoppers to its facts, Marston, 629 A.2d at 591, (Taylor does not even mention Knoppers) and to have adopted the Knoppers dissent's position.  In any event, Knoppers would support the conclusion I reach here.

From my examination of all the Maine cases, I see nothing to lead me to conclude that the Maine Court would define the term "employee" differently for sections 626, 629 and 664.  Indeed, it would create havoc for employers and commerce if the standards for these provisions were different, causing unnecessary complexity in bookkeeping, payroll, etc.  As the United States Supreme Court said in confronting a similarly unhelpful definition in an ERISA case (defining employee as "any individual employed by an employer"):

> [w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms. . . . In the past, when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992) (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989)).  Maine has followed a similar approach in reading the common law right-to-control test into section 626's definition of employee.  There is every reason to believe that it would do the same for the section 663 definition for section 664 employees and for the definition-less section 629.   State Farm Mut. Auto. Ins. Co. v. Koshy, 995 A.2d 651, 663 (Me. 2010) (stating that an ambiguous statute will only be read in derogation of the common law if the legislative history demonstrates the Legislature's intent to do so); Town of Baldwin v. Carter, 794 A.2d 62, 68 (Me. 2002); Davis v. State, 306 A.2d 127, 131 (Me. 1973).[8]

---

[8] The Law Court also follows the Restatements.  The Restatement of Agency, both Second and Third, list criteria very similar to those in Murray's Case, for distinguishing an employee from
*(continued next page)*

For the common law definition of employee, the seminal case is the 1931 decision in <u>Murray's Case</u>, 154 A. 352 (Me. 1931), although <u>Murray's Case</u> itself was not a common law decision.  There the Law Court had to decide whether a worker was an "employee" within the meaning of the Workmen's Compensation Act, or an independent contractor.  The statute defined employee as a "person in the service of another under any contract of hire, express or implied, oral or written."  <u>Id</u>. at 353.  The Court quoted earlier decisions that an independent contractor "is one who carries on an independent business, and in the line of his business is employed to do a job of work, and in doing it does not act under the direction and control of his employer, but determines for himself in what manner the work shall be done." <u>Id</u>.  The Court listed the following eight "tests of the relationship," saying that they were "not necessarily concurrent or each in itself controlling":

> (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work except as to final results: (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer.

<u>Id</u>. at 354.  But the Court also said that "[t]he test of the relationship is the right to control.  It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent."  <u>Id</u>. at 354 (quoting <u>Tuttle v. Embury-Martin Lumber</u>

---

an independent contractor.  Restatement (Third) of Agency § 7.07 (2006); Restatement (Second) of Agency § 220 (1958).

Co., 158 N. W. 875, 879 (1916)); see also id. at 355 (citing Franklin Coal & Coke Co. v. Ind. Comm., 129 N. E. 811 (1921)).   The Law Court said that "[t]here is no conflict as to this general rule," although the results of its application are often contradictory.  Id. at 354.

The Law Court has referred to the same eight factors recurrently over the years since Murray's Case, along with the statement that no one of them is in itself controlling and that the right to control is the principal factor.  E.g., Lunt v. Fid. & Cas. Co., 28 A.2d 736, 740 (Me. 1942) (insurance contract excluding coverage to employees) ("The essential elements are . . . control and direction of the employment . . ., and . . . the right to employ  . . . and . . .discharge."); Lewiston Daily Sun v. Hanover Ins. Co., 407 A.2d 288, 292 (Me. 1979) (insurance contract excluding coverage for operation of an automobile by an employee) ("The right to control the details of performance is the crucial factor in determining the status of an individual who performs services for another," and "no single factor is controlling."); Timberlake v. Frigon & Frigon, 438 A.2d 1294, 1296 (Me. 1982) (Workers Compensation Act definition of employee) ("the vital issue in proving an employee-employer relationship is whether or not the employer has the power of control or superintendence over the petitioner"); Peerless Ins. Co. v. Hannon, 582 A.2d 253, 25 (Me. 1990) (insurance contract) (citing Murray's Case and stating that although no factor is conclusive, "the right of employers to control the activities of those working for them and to begin and terminate the relationship are crucial factors in establishing an employment relationship.  The right to control employment is not negated by the fact that the circumstances of employment have never required exertion of

that right."); <u>North East Ins. Co. v. Soucy</u>, 693 A.2d 1141, 1144 (Me. 1997) (insurance policy) (control and direction and right to employ and discharge are the essential elements; considering eight factors, "regarding no one factor as decisive"); <u>Legassie v. Bangor Pub. Co.</u>, 741 A.2d 442, 445 & n.4 (Me. 1999) (tort principles) (listing the eight factors "with the recognition that 'control' is the most significant of these factors"); <u>Rainey v. Langen</u>, 998 A.2d 342, 346-47, 349 (Me. 2010) (tort principles in context of franchise agreement and Lanham Act, in determining whether franchisor was vicariously liable for conduct of franchisee's employee's conduct) (adopting the "traditional approach" and listing the eight factors from <u>Murray's Case</u>, of which "right to control" is "the most important").

<u>Legassie</u> makes an important observation in a footnote.  It states that when a workers' protective statute such as the Workers Compensation Act is being interpreted, more attention should be given in the eight-factor test to two of those factors:  the nature of the work and its importance to the employer's business.  <u>Id.</u>[9]  I believe that observation applies as well to interpretation of Maine's overtime statute and Maine's limitation on paycheck deductions, because these two "Employment Practices" provisions certainly are labor protective.  <u>Legassie</u>, therefore, along with the Law Court's regular invocation of <u>Murray's Case</u> in section 626 cases and elsewhere, leads me to conclude that,

---

[9] The United States Supreme Court also has noted that in applying "social legislation," coverage may be broader, extending to "those who as a matter of economic reality are dependent upon the business to which they render service."  <u>Bartels v. Birmingham</u>, 332 U.S. 126, 130 (1947).

for both these provisions, the eight-factor test is applicable,[10] but with more attention to the nature of the work and its importance to the employer's business.[11]

The plaintiffs contend that the primary evidence on status/liability will be FXG's Operating Agreement and FXG's policy manuals.  FXG, on the other hand, asserts that there will be an excess of *individualized* evidence as it defends its claim that drivers are independent contractors—evidence of those drivers who profited and those who lost money, those who allowed supervisors to accompany them in their trucks and those who did not, those who were closely regulated and those who were not (for example, facial hair and length of hair), those who invested a lot in their trucks and those who did not—and that the need to present evidence of *actual* control will prevent a finding of predominance.

As I have said, FXG takes the position that *all* the drivers are independent contractors.  That is how the FXG Operating Agreement characterizes them and how FXG maintains that they were treated.  Until the lawsuit, FXG did not maintain that some drivers were independent contractors while others were not.  Thus, the status question initially should be subject to determination on common evidence:  FXG's general treatment of a class of its

---

[10] In other words, in my prediction of what the Law Court would do, I find that even for section 629, Legassie's more recent pronouncement prevails over Cormier's previous endorsement of the economic realities test in a joint *employer* dispute.

[11] I also note two decisions from this federal court:  Beckwith v. United Parcel Service, 711 F. Supp. 655 (D. Me. 1989) (§ 629, the deduction statute and referring to Law Court usage for § 626 that employees include "working people who are dependent upon full and regular wage payments to meet their weekly needs"); Larson v. Johnson, 184 F. Supp. 2d 26 (D. Me. 2002) (§ 626) ("right to control" determines the employment relationship and listing eight factors, without "any one particular factor controlling").

drivers.   True, proof of independent contractor status may show that FXG permitted variations in behavior (supervisory managers at four terminals were involved), or that the drivers varied in the profits or losses that they generated from their activities, or that they varied in negotiating their agreements, or that some but not others executed supplemental documents, or that they paid differing amounts for their trucks, or that they had different levels of skill and initiative.[12]   But to the degree that those are relevant issues under the eight-factor test, they are part of the *common* proof—that FXG accorded independence to its drivers and accorded them economic freedom.   That evidence of variation among drivers is a hallmark of independent contractor status and would be admissible at FXG's request even in an individual lawsuit by one driver, to show that whatever the experience of that individual driver, he had the opportunity and freedom accorded to an independent contractor, as demonstrated by the experience of his fellows; the variety component is not a dimension added by class action certification.   And while there may be a *lot* of evidence to present to show variety, that is not the same as showing that common evidence does not predominate.

Moreover, the right to control, the nature of the work, and its importance to FXG's business—the three most important factors according to the Maine cases—are all subject to common evidence.   There is no dispute as to the last two factors (the nature of the work and its importance to FXG's business).   The

---

[12] Some of this evidence is problematic.   Differing skill and initiative, and different standards of behavior by managers are of course characteristic of an employment relationship as well.

right to control will be determined primarily by the Operating Agreement and other documents that FXG issues.[13]

At oral argument, FXG's lawyer argued that I should focus on what the class action trial will be about (a sensible proposition), and that FXG will be entitled to show that *actual* control varied and to present the individualized evidence of each driver's work experience. But <u>Murray's Case</u> makes the individualized actual control evidence of doubtful relevance: "[t]he test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." <u>Murray's Case</u> at 354.[14]

Instead, assessing the eight factors from <u>Murray's Case</u> makes it clear that at trial the common evidence should predominate, specifically:

---

[13] FXG states in its opposition that

> [t]he Operating Agreement ("OA") signed by FXG contractors provides that it was the mutual intention of both FXG and Plaintiffs to establish an independent contractor relationship. Ex. 5 (OA) at 1, Background Statement. The Agreement sets forth the parties' mutual business objectives, but provides that the "manner and means of reaching these results are within the discretion of the Contractor." Id. The Contractor's compensation, called "settlement," is determined by a formula based largely on the number of packages they pick-up and/or deliver and the number of stops they make. (OA Addendum 3). Under the OA, the Contractor, which may be an entity such as a corporation, is responsible for paying the costs and expenses of operating the Contractor's business (§ 1.3, at 2-3), including the provision of a vehicle (§ 1.1, at 1-2); is allowed to hire other persons to perform the Contractor's contractual obligations (§ 2.2, at 9); has a proprietary interest in the Contactor's route(s) (OA Addendum 5); and is even allowed to sell the route to another qualified person (§ 18, at 27-28). Several of the OA addenda were voluntary, and contractors had the option to refuse to sign them.

FedEx's Mem. of Law in Opp'n to Pls.' Mot. for Class Certification at 4-5.

[14] Some of the Maine cases permit evidence of what actually happened as evidence of the power to control, but for the reasons I explain in text, to the extent it is relevant it still is common evidence as to what independence FXG allows its Maine drivers.

15

(1)     "The existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price":  proof of the contract(s) will largely be common evidence.

(2)     "independent nature of his business or his distinct calling":  to the degree this factor goes beyond what the FXG documents provide, there could be individualized evidence about the "calling" or "business" of various drivers.

(3)     "his employment of assistants with the right to supervise their activities":  the first part (driver employment of assistants) could vary, but not significantly; the second (right to supervise their activities) should be common evidence.

(4)     "his obligation to furnish necessary tools, supplies, and material":  evidence of the obligation should be common; and even the evidence of actual investment is unlikely to vary much, involving a truck, scanner and equipment for lifting packages.

(5)     "his right to control the progress of the work except as to final results":  this should be common evidence.

(6)     "the time for which the workman is employed":  actual length of employment may vary, but the class is limited to fulltime drivers and that will be common evidence.

(7)     "the method of payment, whether by time or by job":  that will be a matter of common evidence.

(8)     "whether the work is part of the regular business of the employer":  that will be a matter of common evidence.

In the end, I find that the predominance standard is satisfied.  Of course, in light of the Law Court precedents, I cannot know with certainty what combination of the eight factors will drive the final decision on the merits.  But it is highly unlikely that the few factors involving individualized evidence will be the driving determination, especially given FXG's business model.  Finally, FXG may be asserting that, even if its business model is incorrect in treating drivers as independent contractors, it should be able to prove that *certain* drivers were in fact independent contractors anyway and thereby avoid damages as to *those particular drivers*.   None of the Maine cases seems to recognize such a defense—*i.e.*, that for a category of workers that should have been treated as employees, an employer can defend against statutory recovery by showing that some individual workers behaved as independent contractors regardless.  I find the defense highly improbable,[15] without Maine case support, and therefore not a factor in the certification decision.[16]

---

[15] See Nerland v. Caribou Coffee Co., 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) (it is "disingenuous" for a defendant to collectively assign classification to all managers "without any individualized inquiry" and then argue individualized inquiries are needed when plaintiffs challenge defendant's class-wide designation).  Tellingly, in its motion to decertify the collective FLSA action, FXG says that "FXG's main individualized defense—that Plaintiffs were properly classified as independent contractors under the FLSA's economic realities test—applies to each Plaintiff."  FedEx's Mot. and Mem. to Decertify Collective Action at 2 (ECF No. 110).
    The United States Supreme Court has noted the importance of categorical judgments for such issues.  See Nationwide Mutual Ins. Co. v. Darden, 503 U.S. at 327 (referring to the need of companies "to figure out who their 'employees' are and what, by extension, their pension-fund obligations will be.  To be sure, the traditional agency law criteria offer no paradigm of determinacy.  But their application generally turns on factual variables within an employer's knowledge, thus permitting *categorical* judgments about the 'employee' status of claimants with similar job descriptions.") (emphasis added).
[16] I do not cite the abundance of decisions from other jurisdictions involving FXG drivers, because I conclude that ultimately Maine law controls in the determination of whether common issues predominate.

*Superiority*

Under the superiority factors enumerated in the Rule, I find that the class members do not have any interests in individually controlling the prosecution of separate actions; there is no other litigation already begun by these class members; it is desirable to concentrate the litigation in this Maine forum for these Maine claims; and difficulties in managing the class action are unlikely to nonexistent.  Here there will be a central question to resolve:  were the drivers independent contractors or employees?  Once that question is resolved, either the lawsuit is over, or there are damages to be calculated.  The parties have previously agreed to bifurcate damages.  In any event, the First Circuit has said that individual damages calculations are not ordinarily a block to class certification.  Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 41 (1st Cir. 2003).  Here they should be largely a matter of straightforward accounting.

FXG argues that a class trial is not superior to individual trials or joinder of claims in part because few drivers ultimately opted into the collective action that I conditionally certified earlier under the Fair Labor Standards Act.  FedEx's Mem. in Opp'n to Pls.' Motion for Class Certification at 2, 26-29.  FXG also says that the plaintiffs' lawyer has access to drivers' names and addresses and has successfully continued to prosecute individual cases in other states where a class was not certified.  As I said under numerosity, the number of opt-ins is not determinative.  The class definition is different from the FLSA collective action definition and is larger here for the state law claims.  Moreover, a class action has the advantage of allowing some drivers to proceed

anonymously for a time as unidentified members of the class.  (For those drivers still working for FXG, there may be some reluctance to join by name a collective action or to file an individual lawsuit.)  The plaintiffs' lawyer said in court at oral argument that, in addition to the 22 drivers who now are part of the FLSA collective action, already he has as clients 46 drivers (he predicts there will be ten or fifteen more) who have not joined the lawsuit because of tolling, that they will file individual lawsuits if a class is not certified, and that the number is likely to grow if no class certification occurs, because some drivers now are relying on the likelihood of class status.

Finally, this is not a "bet the company" case for FXG, a situation that has motivated some appellate courts to show more resistance to class certification. This case involves drivers in only one state, the small state of Maine.  All does not rise or fall on the Maine outcome.  (FXG told me at oral argument that it had successfully obtained summary judgment on similar claims where classes were certified in other states.[17])

I conclude that the superiority factor is satisfied.

Thus, I conclude that all the criteria of Rule 23(a) and (b)(3) are satisfied and that the proposed class should be certified, omitting William Preble as a named plaintiff representing the class.

### THE FLSA COLLECTIVE ACTION

FXG has moved to decertify the collective action that I certified conditionally under the Fair Labor Standards Act.  The FLSA claim is that FXG

---

[17] See also FedEx's Mem. of Law in Opp'n to Pls.' Motion for Class Certification at 10 n. 8 (citing In re FedEx Ground Package Sys., Inc., Emp' t Practices Litig., 758 F. Supp. 2d 638, 734 (N.D. Ind. 2010)).

misclassified its drivers as independent contractors and, as a result of the misclassification, failed to pay them the required overtime for all hours worked in excess of 40 hours per week.  The total size of the collective action after opt-ins is 22 drivers.

Although there is no First Circuit caselaw on the standard for certifying/decertifying an FLSA collective action, the Sixth Circuit says that the standard is less demanding than Rule 23, O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 580 (6th Cir. 2009), and FXG agreed at oral argument.  FXG says that at this decertification stage,

> Courts usually consider three factors: (1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which plaintiffs may be subjected on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action.

FXG Mot. & Mem. to Decertify Collection Action at 1 (ECF No. 110) (citing O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d at 584). The plaintiffs bear the burden, id. at 602, but as the cases repeat, the requirement is that the plaintiffs be "similarly situated," not identical.  See e.g., O'Brien, 575 F.3d at 580.  I also observe that in this case the collective action contains only 22 drivers.  Thus, the quantity of evidence is unlikely to be excessive.  In determining superiority, I weigh the advantages and disadvantages of a collective action against joinder of these drivers or 22 individual trials.[18]

---

[18] On the substantive law of liability, status again controls: are the drivers employees or independent contractors?  But for the FLSA, employment status is controlled by the "economic realities" test, which the cases attribute to Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947).  Rutherford Food dealt with the FLSA definitions of employee ("any individual employed by an employer") and employ ("suffer or permit to work").  (The Supreme Court has said that this definition is one of "striking breadth" that "stretches the meaning of 'employee' to cover
*(continued next page)*

FXG says that the lack of similarity (factor 1) in this case is that in Maine there were four different terminals (Bangor, Lewiston, Saco and Houlton), Declaration of Matt Runko ¶¶ 1-2 (ECF No. 108-2), several different terminal managers, and two different service offerings (residential home delivery (HD) and business package distribution (Ground)), FedEx's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification at 2-4; that the individualized defenses (factor 2) for each plaintiff arise out of their different work experiences; and that there is a lack of fairness and of procedural

some parties who might not qualify as such under a strict application of traditional agency law principles." Nationwide Mutual Ins. Co. v. Darden, 503 U.S. at 326.) Rutherford Food concluded that "determination of the relationship [depends] upon the circumstances of the whole activity," and agreed with the Tenth Circuit Court of Appeals, which had looked at the "underlying economic realities" to determine employee status. Id. at 727. In Rutherford Food, the Supreme Court concluded that the workers in question were not independent contractors but employees, by looking at the group of workers as a whole. 331 U.S. at 730.

Judge Carter of this District has said that under the "economic realities" test, "[t]he focal point is whether the individual is economically dependent on the business to which he renders service or is, as a matter of economic fact, in business for himself." Bolduc v. Nat'l Semiconductor Corp., 35 F. Supp. 2d 106, 112 (D. Me. 1998). According to Bolduc:

> Courts examine the following factors to determine whether an individual is an employee and, thus, is covered by the FLSA: 1) the degree of control exercised by the employer over the worker; 2) the worker's opportunity for profit or loss; 3) the worker's investment in the business; 4) the degree of skill and independent initiative required to perform the work; 5) the permanence or duration of the working relationship; and 6) the extent to which the work is an integral part of the employer's business.

Id. But this reference to the "individual" was not in the context of a company like FXG that puts an entire category of workers under a particular classification. FXG is right or it is wrong in its classification, but it cannot argue that, even if it is wrong in its classification, certain *individual* drivers in fact behave like independent contractors and therefore lack employee protections. If that were so, any employer could make the same argument about selected employees as a defense in an FLSA lawsuit. Applying the Bolduc "economic realities" factors to the category of FXG drivers, in place of the eight-factor common law test, would produce the same conclusion on the certification decision (if the economic realities factors were pertinent there), in particular on the predominance analysis, and it produces no different outcome here for the FLSA collective action. FXG cites a Second Circuit case, Frasier v. General Electric Co., 930 F.2d 1004 (2d Cir. 1991), for the proposition that a particularized inquiry into the relationship between employer and employee is required. In fact, Frasier (like Rutherford Food) was speaking about a category, not an individual, noting that the plaintiff "might be able to adduce facts and evidence to suggest that the pertinent consultants should be deemed employees." Id. at 1008.

efficiency (factor 3) because the individualized evidence requires individual trials.  For the most part, these are the same arguments that I have rejected in granting class certification, and there is no reason to repeat the analysis.  But to summarize: the number of terminals and terminal managers is small;[19] I am highly skeptical of the individualized defense argument, because FXG treated its drivers as a category in its status classification decision; there is nothing unfair about the collective action, and procedural efficiency will be furthered by a collective action involving only 22 drivers.

FXG says that it has an individualized statute of limitations defense to some of the collective action members.  If it does, it should challenge their inclusion in the collective action, but the statute of limitations does not make a collective action inappropriate.[20]  FXG also says that it has a judicial estoppel defense to two of the collective action members who declared bankruptcy but did not list their claims against FXG.  That may be a reason to permit the bankruptcy trustee to intervene as a party, see, e.g., GE HFS Holdings, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA, 2008 WL 2246673, *4 (D. Mass. May 29, 2008); Graupner v. Town of Brookfield, 450 F. Supp. 2d 119, 129 (D. Mass. 2006); Vidal v. Doral Bank Corporation, 363 F. Supp. 2d 19, 22 (D. P.R. 2005), but not to foreclose a collective action.

---

[19] If there is a significant distinction between home delivery (HD) and commercial (Ground) drivers (and I don't believe that there is, given the legal analysis), FedEx Motion and Memorandum to Decertify Collective Action at 6 (ECF No. 110), FXG can suggest two subclasses.

[20] The same is true for FXG's arguments about qualifying vehicle weight and some drivers using corporate status.

I conclude that the drivers are similarly situated and appropriate for the collective action. Under the factors listed by FXG and for reasons similar to those I gave for certifying the class[21], therefore, I **DENY** the motion to decertify the collective action.[22]

## ORDER

1.     Without prejudice to their objections to this decision, the parties shall meet and confer on the form and content of an order certifying and defining the class to satisfy Rule 23(c)(1)(B)'s requirement that the order "must define the class and the class claims, issues, or defenses." William Preble shall not be listed as a named plaintiff representing the class. If the parties cannot agree on the order, they shall present jointly the portions on which they do agree and separately—with support for their competing positions—the portions on which they cannot agree. They shall do so by September 4, 2012.

2.     The parties shall meet and confer on the form and content of a class notice that satisfies Rule 23(c)(2)(B). The same procedures and deadlines shall be followed as in the preceding paragraph.

3.     The order certifying the class must also appoint class counsel. In that connection, I exercise my authority to order that class counsel propose terms for attorney fees and nontaxable costs, as well as record-keeping and documentation requirements, and provide me with any fee agreement(s) that

---

[21] FXG suggests in passing that, by the Rules Enabling Act, Rule 23 supplants any collective action. They cite no authority for the argument. Since the Supreme Court has recognized FLSA collective actions, Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 186 (1989), I reject the argument.

[22] FXG asserts that some members of the collective action do not qualify because of the size of their trucks or because they did not sign an Operating Agreement. FedEx Mot. and Mem. to Decertify Collective Action at 22-23. If that is so, FXG can challenge their membership in the collective action.

23

they have entered.   See Rule 23(g)(1)(C).   They shall do so by the same deadline.

**So Ordered.**

**Dated this 13th day of August, 2012**

/s/D. Brock Hornby
**D. Brock Hornby**
**United States District Judge**

24