UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WAYNE SCOVIL, ET AL., ) | |
| ) | |
|     PLAINTIFFS ) | |
| ) | |
| v. ) | No. 1:10-cv-515-DBH |
| ) | |
| FEDEX GROUND PACKAGE ) | |
| SYSTEM, INC. *d/b/a FedEx* ) | |
| *Home Delivery*, ) | |
| ) | |
|     DEFENDANT ) | |

**PROCEDURAL ORDER ON MOTION FOR AUTHORIZATION OF NOTICE OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

The parties have worked long and hard in reaching a Settlement Agreement of this class and collective action and much of the Settlement Agreement is admirable. But I will not approve notice of a final fairness hearing at this time because I conclude, even before a final fairness hearing, that I cannot approve the Settlement Agreement in its current form. My primary concerns are these:

    1.    Some of the proposed incentive awards to the representative plaintiffs are extremely generous. The Ninth Circuit has cautioned trial courts about the risks of large incentive awards, instructing them "to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157, 1163 (9th Cir. 2013):

> Where a class representative supports the settlement and is treated equally by the settlement, "the likelihood that the settlement is forwarding the class's interest to the maximum degree practically possible increases." But if "such members of the class are provided with special 'incentives' in the settlement agreement, they may be more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large."

Id. (citation omitted). After a preliminary hearing, the plaintiffs' lawyer provided information in support of the proposed awards. It does appear that some of the representative plaintiffs have provided many hours of service and may well deserve incentive awards in some amount. Obviously I will make no decision on that, or the amounts, until the final fairness hearing where objectors, if any, can speak. But the Settlement Agreement provides that if I do not award the requested amount for a representative plaintiff, that representative plaintiff can opt out of the class action, and FXG can walk away from the Settlement Agreement if a representative plaintiff opts out.[1] Representative plaintiffs are often described as fiduciaries for the class. Yet the proposed arrangement would allow a representative plaintiff to effectively scuttle the settlement for the entire class if he or she does not like the amount of incentive award I allow that representative plaintiff. That also puts me as the presiding judge in a difficult position realizing that, at that late stage after the expense of notice and hearing, if I approve an amount lower than requested, I might scuttle the settlement for the entire class.

---

[1] FXG is given complete discretion in deciding whether to terminate the agreement on that account. Settlement Agreement Section V(I) (ECF No. 247-1).

2. The Settlement Agreement provides that if a representative plaintiff is unhappy with the incentive award I approve and opts out, the amount of that incentive award reverts back to FXG, not into the pool for distribution to the other class members. (The same is true if I approve a diminished amount but the representative plaintiff chooses not to opt out. Then the amount of the reduction goes to FXG, capped at $50,000.) That arrangement, along with FXG's unilateral discretion to walk away if a representative plaintiff opts out, makes it appear that FXG is buying these particular plaintiffs' participation in the agreement. That gives me discomfort in whether I can rely upon these representative plaintiffs as fiduciaries for the class, as opposed to pursuing their own interests. See Radcliffe supra. At the preliminary hearing, the plaintiffs' lawyer said that the opt-out opportunity for those individuals "was something that we were required to agree to." Tr. of Prelmin. Hr'g on Settlement at 19 (ECF No. 241). He also told me that "some of the named plaintiffs believed that they should have had a better incentive payment because they had done so much work on the matter," and that FXG agreed to add $50,000 to the settlement but "they wanted at least that part reverted because we had a—they wanted that part reverted." Id. at 21. FXG's lawyer offered me no reason for the reversion requirement.

3. The Settlement Agreement provides that, apart from the representative plaintiff issues described above, FXG can also walk away if more than 1% of the class opts out. We know the size of the class, and that 1% figure means that if only two class members opt out, FXG is no longer bound.

3

That strikes me as an exceedingly demanding requirement and it would essentially allow two representative plaintiffs to scuttle the deal, even if the Settlement Agreement were amended to address concerns 1 and 2 above.

4. The Settlement Agreement provides that "No Class Member may be heard at the Fairness Hearing who has not sent in an appropriate objection." Settlement Agreement Section V(E)(2) (ECF No. 247-1). Who will be heard at the Fairness Hearing is for the court to decide, not for the parties to determine in their Settlement Agreement.

5. Section IX, the Confidentiality provision, is very broad. It purports to bind class members and prohibit them from disclosing how much they individually received. It also extends the prohibition on disclosure to the total settlement amount and the plaintiffs' attorney fees. I believe there is a public interest in knowing about class action settlements, what amounts plaintiffs' counsel receive in such lawsuits, and how the award relates to the total recovered. Some of the amounts that the Settlement Agreement treats as confidential are already a matter of public record on the court's docket. Although I am not concerned about restrictions on class counsel publishing or advertising their success, I see no reason why class members should be bound by this confidentiality provision.

It is not for me to amend the Settlement Agreement, but it is my role to determine what I will approve and there is no point in giving notice of a hearing if it is already apparent that I will not approve the Settlement Agreement in its

current form. If counsel believe that a conference would be helpful, they may request one.

**SO ORDERED.**

**DATED THIS 26TH DAY OF SEPTEMBER, 2013**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

5