UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

_____

| | |
|---|---|
| WAYNE SCOVIL, CHRISTY PARSONS, ) | |
| KELLEY NYLUND, CLARENCE ) | |
| MCMULLEN, JR., BRENT BAILEY, HENRY ) | |
| SMITH, DUANE HUMPHREY, and WILLIAM ) | |
| PREBLE, individually and ) | |
| on behalf of all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | C.A. No. 1:10-cv-00515-DBH |
| ) | |
| v. ) | |
| ) | |
| FEDEX GROUND PACKAGE SYSTEM, ) | |
| INC. d/b/a FEDEX HOME DELIVERY, ) | |
| ) | |
| Defendant ) | |

_____

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On August 29, 2013, Plaintiffs filed a motion for preliminary review of the proposed class

action settlement that they have reached with Defendant FedEx Ground Package System, Inc.

("FedEx").  In that motion, Plaintiffs sought approval of the settlement's terms as described in the

parties' agreement, including the method and allocation of the settlement fund, and for approval of

the notice that would be issued to the settlement class members.  See Docket No. 236.  On

September 26, 2013, the Court issued a procedural order outlining certain concerns it had with the

proposed settlement.  See Docket No. 249.  On October 21, 2013, the Court conducted a status

conference and instructed the parties to submit additional materials from which it could evaluate

the proposed settlement and consider whether or not to approve notice to class members.  See

Docket No. 257.  The parties thereafter submitted additional materials, including a revised

settlement agreement and revised class notice for the Court's review which addressed the issues

raised by the court.  See Docket Nos. 258-61.  The Court thereafter conducted a third conference

1

with the parties on November 20, 2013, see Docket No. 263, and then on December 5, 2013, the Court issued its Order approving dissemination of notice of the settlement to the class.  See Docket No. 266.

On December 12, 2013, Class Counsel issued the Court-approved notice to class members using contact information provided by FedEx.  The notice, which was reviewed and approved by this Court, informs class members of the procedural history of the case, including the mediation held in August 2013, describes the formula used to calculate class member settlement shares, provides information on how to opt-out or object to the settlement, provides each class member with the minimum amount of their settlement share, states the date of this Court's hearing to consider final approval of the settlement, and provides contact information for Class Counsel should class members have any questions.[1]  A copy of the notice in the form in which it was issued to class members is attached as **Exhibit A**.

As of this date, no class members have opted out of the settlement.  However, Class Counsel believes that some class members may appear at the scheduled hearing and object to the settlement, and one class member has, today, filed a written objection with the Court.  See Docket No. 268.  Under the terms of the settlement, all class members who do not opt out of the settlement will receive their payment approximately 45 days after the Court issues its final order approving the terms of the settlement.  Moreover, since first issuing the notices, Class Counsel has attempted to locate updated contact information for any class member whose notice was returned as undeliverable.  Class Counsel has reissued notices both to those class members for whom it has located updated contact information and to those class members who have contacted it stating that

---

[1]     Earlier in the litigation, after this case was certified as a class action in 2012, class members received a court-approved notice that included a description of the claims alleged by the plaintiffs on behalf of the class.  See Docket No. 158-1.  There were only 3 opt outs at that time, and none have filed a separate action or indicated an intent to do so.

2

they did not receive notice.   As of this date, 17 out of 141 notices were returned as undeliverable to Class Counsel.  Of those 17, Class Counsel has located updated contact information and reissued notices to 14 class members. In addition, eight class members contacted Plaintiffs' firm with updated contact information.  As of today, Class Counsel had located and notified all but three of the 141 class members.

At this time, Plaintiffs respectfully request that this Court approve the proposed class action settlement pursuant to Federal Rule of Civil Procedure 23(e).  As set forth herein, the proposed settlement is a fair and reasonable compromise of the claims asserted in this litigation. It assures the members of the class a significant, definite recovery now as opposed to the risks and delays associated with continued litigation.  The proposed settlement also provides for reasonable incentive payments to those individual plaintiffs who prosecuted this action on behalf of their fellow workers and reasonably compensates Class Counsel for their expertise, time and risk in bringing this action.  For these reasons, and as more fully set forth below, Plaintiffs ask that the Court GRANT this motion.

## I.   NOTICE AND THE PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS

### A.  Notice of the Settlement.

On approximately December 12, 2013, Class Counsel sent notice of the class settlement by first-class mail to the last known addresses of all individuals who executed a standard Operating Agreement with FedEx Ground Package System, Inc. and worked full time as delivery drivers in Maine under that agreement at any time between December 16, 2004 and December 16, 2010.  FedEx provided these addresses to Class Counsel, based on its corporate records. When notices have come back as undeliverable, Class Counsel has performed searches to obtain updated addresses using the Westlaw People Finder database and has promptly resent the notices

to these updated addresses.  Additionally, Class Counsel has been contacted by members of the

class who learned of the proposed settlement and provided updated address information.  Notice

was originally mailed to 141 individuals.  Initially, 17 of the mailings were returned as

undeliverable.  After the searches and contact with class members described above, notice was

resent to updated addresses for 14 of the 17 individuals for whom the notice was originally

undeliverable (leaving a total of 3 undeliverable notices).

The method of notice in this case (which was preliminarily approved by this Court)

satisfies the standard established by the United States Supreme Court for disseminating notice to

class members, namely it is "the best notice that is practicable under the circumstances." Brown v.

Colegio de Abogados de Puerto Rico, 2011 WL 721910, at *1 (D.P.R. Feb. 28, 2011) (citing

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317-18 (1950)).  As one court has

noted, "'[n]otice need not be perfect, but need be only the best notice practicable under the

circumstances, and each and every class member need not receive actual notice, so long as class

counsel acted reasonably in choosing the means likely to inform potential class members.'" Serio v.

Wachovia Securities, LLC, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009) (quoting In re Merrill

Lynch TYCO Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y. 2008)); see also In re Integra

Realty Resources, Inc., 354 F.3d 1246, 1261 (10th Cir. 2004) ("imposing a requirement of actual

notice to every class member would place an impossible constraint on . . . class action litigation").

Here, Class Counsel believes that they have reached  98% of all class members, which is an

extraordinary percentage.

Courts routinely recognize that notice by mail satisfies the requirements of Rule 23 regarding

notice.  See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197,

218 (D. Me. 2003) ("[I]ndividualized notice by first-class mail ordinarily satisfies the requirement

that class members receive the best notice practicable under the circumstances"); Parks v. Portnoff Law Assocs., 243 F. Supp. 2d 244, 249 (E.D. Pa. 2003) (notices mailed to class members' last known addresses held reasonable and adequate). Moreover, the low undeliverable rate here—less than 3% of the class—is significantly better than most cases that courts have found to be within the range of acceptability. See, e.g., In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261 (10th Cir. 2004) (notice held reasonable and adequate even though 1,455 out of 6,423 claim forms were "not actually received"); Grunin v. International House of Pancakes, 513 F.2d 114, 121-22 (8th Cir. 1975) (approving notice where 33% of class members not reached by mailing). Given Class Counsel's substantial efforts to ensure that notice of the class action settlement is actually received by as many class members as possible, the dissemination of the notice here unquestionably satisfies Rule 23. See Nilsen v. York Cnty., 382 F. Supp. 2d 206, 211 (D. Me. 2005). Further, should any of the very few remaining class members not accounted for, contact Class Counsel before the distribution date, counsel, will include them in the final distribution.

### B. Proposed Plan for Distribution of the Settlement Funds.

The proposed settlement agreement provides for distribution of the settlement funds as follows: a) one-third of the settlement will be used to pay attorneys' fees and costs, including the cost of administering the settlement; b) a total of $130,000 will be used to provide incentive payments to nine plaintiffs and opt-in plaintiffs who assisted significantly in the prosecution of this case; and c) the remainder of the settlement fund will be distributed among class members according to a formula agreed upon by the parties. The formula for class member distribution, which has been agreed upon by the parties and explained to class members in the notice, awards class members an amount per week for each week worked during the class period, December 16, 2004 and December 16, 2010. Under the formula, weeks are weighted such that class members with longer service during the class period receive higher amounts than those with a shorter

period of service.  The minimum payment under the formula is $100 for every week worked and the maximum weekly payment under the formula is $174.15.  This formula reflects the fact that those class members who had worked longer for FedEx had also generally suffered greater expenses, including vehicle costs and vehicle maintenance.  Applying this formula to the class, the lowest payment is $214.29 (for an individual who worked 2.14 weeks during the class period) and the highest payment is $54,508.99 (for individuals who worked 313 weeks during the class period).  Nearly half the class will receive settlement awards of over $25,000 under the proposed settlement and distribution plan.  See Docket 260-2.  However even this amount may increase somewhat because the entire settlement is non-reversionary, and if some class members cannot be found, their amounts get redistributed to the participating class members. (The agreement gave FedEx the right to void the agreement if 10% or more of the class opted-out of the settlement, but that did not occur and is, therefore, no longer a concern).

If the Court approves the proposed settlement, it shall become effective three business days after the Court enters such an order and the time for any challenge to the settlement, including on appeal, has lapsed.  Within ten business days of that date, Class Counsel will distribute settlement awards to class members.  Settlement checks issued to class members shall be valid for 90 days.  After that time, any un-cashed checks will be paid to a *cy pres* beneficiary designated by FedEx and approved by the Court.  Checks to class members will be reported by FedEx as 1099 income.

The proposed distribution also allocates $1,931,400, for attorneys' fees, costs, and settlement administration.  As discussed below, in Section III, this amount is fair and reasonable given the nature and scope of this litigation and relevant legal precedent.  In addition, the proposed settlement provides for incentive payments as follows: $20,000 for Wayne Scovil;

6

$15,000 each for Brent Bailey, Duane Humphrey, Clarence McMullen, Kelley Nylund, Christy Parsons, and Henry Smith; and $10,000 each for Anthony Esposito and James Maffei. These amounts, are appropriate in light of the efforts, assistance and risk these plaintiffs took bringing these claims on behalf of a class of their fellow workers, as discussed in Section III, below.

## II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

A class action may not be compromised without court approval, and the court must decide whether the settlement is "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e); see also In re Relafen Antitrust Litig., 360 F. Supp. 2d 166, 195 (D. Mass. 2005). This Court has considered six factors in determining the reasonableness of a proposed class action settlement: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration. In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 206-07 (D. Me. 2003) judgment entered, MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003) (Hornby, J.). In this Circuit, "settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair." Id. citing City P'ship Co. v. Atlantic Acquisition Ltd. P'ship., 100 F.3d 1041, 1043 (1st Cir. 1996); see also In re M3 Power Razor System Marketing & Sales Practice Litig., 270 F.R.D. 45, 62-63 (D. Mass. 2010) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."). Here, applying these factors and the standard applied by the First Circuit, the settlement proposed in this case is reasonable and final approval is appropriate.

**A.  Value of the Settlement**

The total class settlement is reasonable when evaluated against the potential total recovery, after a successful trial, discounted for risk, delay and expense.  See Compact Disc, 216 F.R.D. at 207.  Here, Plaintiffs allege that FedEx unlawfully misclassified its delivery drivers as independent contractors and, as a result, failed to pay overtime wages and forced the drivers to suffer impermissible deductions from their wages and bear expenses that were the responsibility of FedEx.  Plaintiffs estimate, based upon the evidence produced thus far during the litigation, including documents produced by FedEx, that most drivers suffered approximately $78 dollars per week on average in improper deduction from their pay checks, and approximately $100 to $140 per week in overtime damages during the class period.  Under the settlement distribution formula described above, each class member will receive between $100 and $174 per week worked during the class period.  This compromise is reasonable in light of the hurdles the plaintiff-class would face both on damages and liability were the case to move forward.[2]

First, although the Plaintiffs believe that the Court would rule that the drivers were, as a matter of law, FedEx's employees, the Court has not yet ruled on the parties' cross-motions for summary judgment and liability has not been established.  Decisions regarding whether the FedEx Ground drivers were employees have been, admittedly, a mixed bag.  See, e.g., Wells v. Fedex Ground Package Sys., Inc., 2013 WL 5435484 (E.D. Mo. Sept. 27, 2013) (drivers were employees under Missouri law); Schwann v. FedEx Ground, 2013 WL 3353776 (July 3, 2013) (holding FedEx drivers were employees under Massachusetts law); In re FedEx Ground Package

---

[2]       The Court need only look to the FedEx cases that were litigated in the MDL to understand how long these cases may take to resolve.  There, the lead case from Kansas was filed nearly a decade ago.  After the class was certified in 2007 and summary judgment entered for FedEx in 2012, the drivers appealed.  That same year, the Seventh Circuit certified the question of the drivers' employment status to the Kansas Supreme Court, where the case still sits and the nearly 500 person class awaits a resolution of their claims.  See Craig v. FedEx Ground Package Sys., Inc., 686 F.3d 423, 431 (7th Cir. 2012).

Sys., Inc., 869 F. Supp. 2d 942, 989 (N.D. Ind. 2012) (drivers were independent contractors under Kansas law); FedEx Home Delivery v. N.L.R.B., 563 F.3d 492, 502 (D.C. Cir. 2009) (drivers were independent contractors for purposes of the National Labor Relations Act).  Were the drivers to establish liability, however, significant legal issues would still remain as to the scope of damages recoverable.  With respect to the drivers' claim for overtime, pursuant to 26 M.R.S.A. § 664, Plaintiffs would need to establish the number of hours worked over 40 by class members during the period.  In addition, there would certainly be legal disputes as to which method – and at what rate – overtime damages would be calculated and those damages would be limited in value because it is likely that the fluctuating work week method (which would result in a lower overtime rate) applies.  See, e.g., O'Brien v. Town of Agawam, 350 F.3d 279, 288 (1st Cir. 2003).  The Court's ruling as to those legal issues would significantly impact the damages available to the drivers on their overtime claim.

Of the weekly damages Plaintiffs estimate drivers suffered, approximately $78 per week in damages due to unlawful paycheck deductions.   This claim, brought pursuant to 26 M.R.S.A. § 629, has not been extensively litigated in the Maine courts.  Again, the Court would be called upon to resolve legal issues as to the scope of damages available under this claim, including whether or not liquidated damages and attorneys' fees are available.  Compare Cooper v. Springfield Terminal Railway Co., 635 A.2d 952, 955 with Beckwith v. United Parcel Service, Inc., 889 F.2d 344 (1st Cir. 1989).  Finally, Plaintiffs maintain that the deductions statute also permits them to recover for expenses they were improperly required to shoulder, for FedEx's benefit because the statute prohibits employers from requiring workers to reimburse the company for "items incurred by the employee in the course of the employee's work or dealing with customers on the employer's behalf, such as damages to the employer's property or any

merchandise purchased by a customer" and "uniforms, personal protective equipment or other tools of the trade that are considered to be primarily for the benefit or convenience of the other tools of the trade that are considered to be primarily for the benefit or convenience of the employer." Again, however, this theory of recovery has never, to Class Counsel's knowledge, been litigated in Maine and the Court would be asked to resolve a novel legal issue that, if resolved in Plaintiffs' favor, would certainly be appealed by FedEx.[3]

### B. Class Reaction

The primary response to the settlement has been positive. Class members have expressed their gratitude at being part of the case. The Court has received one objection to the settlement.[4] To date, no one has opted out of the class, further evidence of the class' overall satisfaction with the proposed settlement. See Compact Disc, 216 F.R.D. at 211.

### C. Stage of Litigation

The proposed settlement comes more than three years into this litigation, which has yielded "enough time for serious discovery and evaluation." Compact Disc, 216 F.R.D. at 211. The parties have exchanged millions of documents, conducted over a dozen depositions of drivers and FedEx managers who worked in defendant's Maine terminals during the relevant period, and exchanged written discovery, including detailed interrogatory responses. Class certification has been briefed and allowed. See Docket No. 137. Importantly, and as noted

---

[3]     In Beckwith, for example, the First Circuit, interpreting §629, held that the Maine statute limits an employee's remedies under the act to "the return of the amount wrongly withheld from his pay." Beckwith, 889 F.2d at 350.

[4]     This objection was filed by Mark R. Vaillancourt, today, on January 27, 2014.  Mr. Vaillancourt raises three issues: the reimbursement for expenses, the amount of overtime worked, and the incentive payments to named plaintiffs.  Class Counsel will respond to these in order.  First, while it is certainly true that the drivers' expenses were significant, Maine does not have an expense statute.  Compare California Labor Code 2802; Mont. Code Ann. Section 39-2-701.  Second, while Class Counsel agrees that many drivers may have regularly worked 60 hours per week, under the fluctuating work method, the drivers would receive only the half time premium for the hours worked over 40.  See 29 C.F.R. § 778.114.  Third, with respect to the incentive payments, Class Counsel have significantly reduced those payments from what was first proposed.  The current proposed incentive awards are within the range of those commonly approved by courts, particularly in class settlement of this size.

above, the parties have fully briefed cross-motions for summary judgment as to the drivers'

employment status, through which both sides have laid their cards on the table and made their

best legal arguments in support of their respective desired conclusions.  The materials attached to

the summary judgment materials alone should satisfy this Court as to the scope of discovery and

investigation conducted by the parties up to this moment.  See Docket Nos. 186-203; 210-224.

Thus, there can be little question that the parties' have gone deep enough into the merits of their

cases to be able to fairly evaluate the settlement value of the case.  See In re Tyco, 535 F. Supp.

2d at 261 (noting that parties, after extensive discovery, "have most of the crucial facts in their

possession, making them well-positioned to understand the merits of their case.").

### D.  Quality of Counsel and Representation

Class Counsel are well-qualified and experienced class action litigators, particularly in

the field of wage and hour litigation, making them more than competent to represent the interests

of the class.  Importantly, the law firm of Lichten & Liss-Riordan has represented classes of

FXG drivers in Montana, Connecticut, Massachusetts and Vermont in suits alleging nearly

identical claims.  See In re FedEx Ground Package Sys., Inc., 381 F. Supp. 2d 1380 (J.P.M.L.

2005); Sheehan v. FedEx, C.A. No. 1:05-cv-10936-RGS (D. Mass. Filed May 6, 2005); Magno

v. FedEx, C.A. No. 3:07-cv-00811-JCH (D. Conn. Filed May 22, 2007); Gruhn v. FedEx, C.A.

No. 3:07-cv-00412-RLM (D. Vt. Filed July 25, 2007); Carlson v. FedEx, C.A. No. 2-05-cv-

00085-SHE (D. Mt. Filed Dec. 9, 2005).[5]  In addition, lead counsel, Harold Lichten, is a highly

experienced litigator, having represented working people before courts, arbitrators, state agencies

and at bargaining tables for more than thirty years, and who for the last eight years, has made

---

[5]      Additionally, Lichten & Liss-Riordan has represented groups of individual FedEx drivers in actions
alleging, as here, misclassification and failure to pay wages.  See Schwann v. FedEx Ground Package Sys., Inc.,
2013 WL 3353776 (D. Mass. July 3, 2013); Carlson v. FedEx, C.A. No. 2-05-cv-00085-SHE (D. Mt. Filed Dec. 9,
2005).

independent contractor misclassification, particularly for delivery drivers, a major focus of his work. See, e.g., Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013) (representing class of misclassified cable installers seeking unpaid wages); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745 (D. Mass. Dec. 30, 2013) (class of delivery drivers were employees under Massachusetts law); Martins v. 3PD, Inc., 2013 WL 1320454 (D. Mass. Mar. 28, 2013) (same); Somers v. Converged Access, Inc., 454 Mass. 582 (2009) (where the SJC explained the strict nature of the Massachusetts independent contractor statute). Attorney Donald F. Fontaine has over thirty-five years of experience representing individuals and plaintiff-classes in labor and employment actions before the state and federal courts of Maine and the First Circuit and is considered the Maine guru for wage and hour cases in that state.  See Parker v. Wakelin, 123 F.3d 1 (1st Cir. 2003); McCormick v. Festiva Dev. Group LLC, 2010 WL 582218 (D. Me. 2010); In re Wage Payment Litigation, 759 A.2d 217 (Me. 2000).

Throughout the litigation, Class Counsel was able to draw on their experience – both litigating in Maine and against this defendant in other jurisdictions – to effectively and efficiently prosecute this case, negotiate the proposed settlement, and calculate class members' settlement shares.  Indeed, Class Counsel has represented workers in dozens of other class action cases raising wage and hour claims on behalf of workers, including misclassified workers as alleged here.  Significantly, Class Counsel has reached court-approved class settlements in more than thirty other cases alleging wage law violations in state and federal courts.  Class Counsel are thus well aware of the law in this area, and their experience has provided the plaintiff class with a high degree of expertise, which clearly contributed to a favorable resolution of this case.

Counsel used the knowledge derived from these other cases in determining what would be a fair settlement for the class in this case.

The law firm of Lichten & Liss-Riordan is also experienced in the mechanics of class settlement administration.  In the more than 30 other cases they have settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds.  These tasks have required counsel, and their paralegal assistants, to speak with and correspond with numerous class members.  For them, these settlements have brought them additional income, which most of them were not expecting.  While class members may have little basis from which to judge independently the fairness of a proposed settlement, Class Counsel take very seriously their obligation and duty to these unnamed class members and will agree to a settlement only when they are convinced that it is in the best interest of the class.  Moreover, in this case, FedEx has since changed its practice in Maine, transitioning from a workforce of single route drivers to a structure where the company contracts with other, smaller companies – or "ISP"s – to provide pick-up and delivery services.

In this case as well, the named plaintiffs have been committed to obtaining a fair resolution of the case for all of their fellow class members as well as themselves, and have supported Class Counsel's commitment to negotiating on behalf of the interest of the entire class. All of the named plaintiffs sat for day long depositions, responded to interrogatories and produced documents in support of their claims.  The documentary records retained by Plaintiffs were particularly helpful to class counsel, as they provided evidence concerning average weekly earnings, hours worked, deductions from pay, FedEx policies and communications with FedEx managers.  These materials helped Class Counsel both in prosecuting the claims and in

evaluating the reasonableness of the proposed settlement.  In addition, many of the named

plaintiffs provided sworn declarations in support of both conditional and class certification.

Three of the named plaintiffs – Wayne Scovil, Brent Bailey and Clarence McMullen – and one

opt-in Plaintiff – James Maffei – attended a day-long mediation in Portland during which they

assisted counsel in negotiations and sought to represent the interests of absent class members.

Lead Plaintiff, Wayne Scovil, has been particularly vigilant in his role as a class representative.

Mr. Scovil has attended nearly every hearing and deposition of FedEx witnesses conducted in

this case.  In addition, he has assisted other plaintiffs and class members in communicating with

Class Counsel and complying with discovery obligations (including driving across rural Maine to

obtain responsive documents in order to deliver them to Class Counsel).  The Plaintiff class

could not ask for better representation than these named Plaintiffs.

### E.  Conduct of Negotiations

The negotiation of the settlement was conducted at arms' length.  In August 2013, the

parties attended a day-long mediation with retired Law Court judge Daniel E. Wathen in

Portland, Maine.  Three of the named plaintiffs and one opt-in plaintiff attended the mediation,

as did corporate representatives from FedEx.  The parties' negotiations continued for over a

week after the conclusion of the mediation before reaching the proposed-settlement.  Throughout

the negotiations, Class Counsel remained in contact with representative plaintiffs concerning the

terms and amount of the proposed settlement.

### F.  Case Prospects, Including Risk, Complexity, Expense and Duration

In addition to the legal issues remaining to be litigated in this case, discussed above, the

Court must also consider the length of continued litigation and the possibility of appeal, and the

delay of possible recovery by the class to which these factors contribute as markers of the

proposed settlement's value and reasonableness.  <u>Compact Disc</u>, 216 F.R.D. at 212; <u>In re Tyco</u>, 535 F. Supp. 2d at 260 (noting additional risk, uncertainty and delay faced by plaintiff class if case proceeded to trial).  This case has been bifurcated between liability and damages.  <u>See</u> Docket No. 112.  If the settlement is not approved, the parties will ask that the current stay of the litigation be lifted and that the Court resolve the pending cross-motions for summary judgment.  Nearly any outcome is likely to result in further litigation.  If Plaintiffs' motion is successful, the parties will move on to discovery on damages and, ultimately a trial on damages.  If FedEx is successful, Plaintiffs will seek an appeal.  If the Court denies both parties' motions, the case will go to trial on liability and, if Plaintiffs are successful there, back to discovery on damages and then on to a second trial as to what amount the class is owed.  All of these outcomes portend years of continued litigation.  Even if Plaintiffs successfully establish liability and damages, FedEx will certainly appeal that decision given that the company is facing similar litigation throughout the country and has a vested interest in defending its business model.  <u>See</u> <u>See e.g.</u>, <u>In re FedEx Ground Package Sys., Inc. Employment Practices Litigation</u>, 758 F.Supp.2d 638, 654 (N.D. Ind. 2010); <u>Anfinson v. FedEx Ground Package Sys., Inc.</u>, 244 P.3d 32 (Wash. Ct. App. 2010).  These realities in particular illustrate the value of the settlement, which puts significant awards in drivers' wallets today, without years of future litigation, appeals and the risk of no recovery.

For these reasons, and the reasons set forth in Plaintiffs' Motion for Preliminary Review (Docket No. 236), Plaintiffs respectfully request that the Court approve the proposed settlement and plan of distribution.

III.    THE REQUESTED INCENTIVE PAYMENTS ARE APPROPRIATE

The settlement also proposes incentive payments as follows: $20,000 to Plaintiff Wayne Scovil; $15,000 each to Plaintiffs Brent Bailey, Duane Humphrey, Clarence McMullen, Kelley Nylund, Christy Parsons, and Henry Smith; and $10,000 each to Opt-In Plaintiffs Anthony Esposito and James Maffei.  These proposed incentive payments are fair and reasonable, given that it was these plaintiffs who initiated the lawsuits on behalf of their co-workers and because it was through their initiative that this recovery was obtained.  The named plaintiffs provided invaluable assistance to class counsel, including providing documents, responding to discovery, sitting for day-long depositions and contacting class members to gather evidence relating to the case, and assisting Plaintiffs' counsel during settlement discussions.  See Docket 242-1.  At the time the case was filed, Plaintiff Bailey was still driving for FedEx under his own contract with Defendant and Plaintiffs McMullen, Nylyund and Smith were all also driving FedEx routes as employees of contractors who had continued their relationship with FedEx after the company's transition to the ISP model.  Id.  These four plaintiffs continued to walk into a FedEx terminal every day, to perform their jobs, after having put their names on a complaint suing FedEx.  Opt-in Plaintiffs Esposito and Maffei filed consent to sue notices months before conditional certification had been granted and notice sent to the class; they have assisted Class Counsel throughout the litigation, including producing documents, sitting for depositions, attending hearings and attending depositions of FedEx managers. Id.[6]  This participation represents time and effort that was not contributed by all other members of the class and, as such, merits an incentive award.  See In re New Motor Vehicles Canadian Exp. Antitrust Litig., MDL 1532,

---

[6]      Additional details concerning each individual plaintiff's efforts, along with supporting declarations – can be found at Docket No. 242.

2011 WL 1398485 (D. Me. Apr. 13, 2011) supplemented, 800 F. Supp. 2d 328 (D. Me. 2011)

and aff'd, 2:03-MD-1532-DBH, 2012 WL 379947 (D. Me. Feb. 3, 2012).

"Because a named plaintiff is an essential ingredient of any class action, an incentive

award can be appropriate to encourage or induce an individual to participate in the suit."

Compact Disc, 292 F. Supp. 2d at 189.  Courts have widely recognized that incentive payments

serve an important function in promoting enforcement of state and federal law by private

individuals, while encouraging class action settlements.  See In re Relafen Antitrust Litig., 231

F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important

function in promoting class action settlements, particularly where, as here, the named plaintiffs

participated actively in the litigation"), quoting In re Lupron, 228 F.R.D. 75, 98 (D. Mass. 2005);

Savett, et al., "Consumer Class Actions: Class Certification Issues, Including Ethical

Considerations and Counsel Fees and Incentive Payments to Named Plaintiffs," 936 PLI / Corp.

321, 340 ("It has become commonplace for the named representatives to request a special

payment for having borne the flag and headed a class action.  Most courts are receptive to this

because they feel that private attorneys general should be encouraged, and such incentives

further the goals of federal and state laws"); see also, e.g., Sheppard v. Consol. Edison Co. of

New York, Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 2002) (collecting cases approving

incentive payments).

It is not uncommon for courts to approve incentive payments in the range of those

requested in this case, and in even higher amounts.  See, e.g., Ingram v. The Coca-Cola Co., 200

F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of four representative plaintiffs);

In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366, 373-74 (S.D. Ohio 1990)

(citing cases in support of incentive payments and awarding payments ranging from $35,000 to

$50,000 for named plaintiffs); Yap v. Sumintomo Corp. of Am., 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative plaintiffs).

Indeed, incentive payments serve a particularly important role in employment class actions, where the lead plaintiffs are risking their livelihood (including their professional reputation) to bring the case forward on behalf of their fellow co-workers.  Courts have recognized the important role of class actions in the employment context precisely because of this very real element of potential retaliation.  See, e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010) (in certifying national class of skycaps challenging $2 per bag curbside check-in charges, court noted with approval skycaps' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy"); Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, *inter alia*, "some class members may fear reprisal"); Guzman v. VLM, Inc., 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation").  This same consideration makes incentive awards even more crucial in employment class action settlements as well.  As one court has observed: "[Incentive] awards are particularly appropriate in the employment context.  In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."  Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005).  As such, Plaintiffs respectfully request that the proposed incentive awards be approved.

## IV.   THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

The proposed distribution of the settlement proceeds provides for $1,931,400 for attorneys' fees and expenses.  That amount is in line with the usual and customary practice of setting contingency fees at one-third of any recovery.[7]  In the First Circuit, a district court's "latitude is extremely broad" with respect to determining an appropriate award of attorneys' fees under the percentage of common fund method, which is the method proposed here.  See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 309 (1st Cir. 1995).  Courts generally favor an award of fees from a common fund, as called for by the proposed settlement in this case.  As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . .  Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (citations omitted).

In the First Circuit, assessing attorneys' fees in class action settlements as a percentage of the common fund is the prevailing and favored approach over the loadstar method.  See Compact Disc, 216 F.R.D. at 215 citing In re Thirteen Appeals, 56 F.3d at 307 (awarding attorneys' fees of $68 million out of a $220 million settlement fund).  As one court in this Circuit has noted:

> By assessing attorneys' fees and litigation expenses against a common fund, the court spreads these costs proportionately among those benefitted by the suit. Moreover, providing adequate compensation encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one rather than

---

[7]   Contingency fee arrangements typically provide for attorneys' fees equal to one-third of a settlement amount, *plus* reimbursement of any costs, so the maximum award of fees and costs in this case is actually lower than what would result from a typical contingency arrangement.  In addition, the Notice of Settlement informs class members that one-third of the settlement proceeds would be used to pay for attorneys' fees.

settling lower and earlier than would be in the best interests of the class members they represent.

In re Tyco, 535 F. Supp. 2d at 265.  As the First Circuit observed, the percentage method is less burdensome to administer than the lodestar method.  In re Thirteen Appeals, 56 F.3d at 307.[8]  The court also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time – a loadstar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements.  Id.[9]  When using the percentage method, courts routinely approve fee awards that represent one-third of the settlement fund.[10]

In Nilsen v. York County, 400 F. Supp. 2d 266, 278 (D. Me. 2005) (Hornby, J), this Court adopted the standard set forth by the Seventh Circuit in In re Synthroid Mktg. Litig., 264

---

[8]     To the extent that there are risks associated with allowing recovery of fees as a percentage of the common fund, those risks are not present here.  In Thirteen Appeals, the First Circuit noted the concern that this approach "may result in the overcompensation of lawyers in situations where actions are resolved before counsel has invested significant time or resources."  56 F.3d at 307.

[9]     In Thirteen Appeals, the First Circuit noted that other Courts of Appeals have *required* the use of percentage awards in common fund cases.  See, e.g., Camden Condominium Ass'n v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991); Swedish Hospital Corp. v. Shalala, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993).  See also Report of Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255 (1985) and Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, 63-64 (1994).

[10]     There are countless examples of cases in which a one-third fee was approved, including:  In re Lithotripsy Antitrust Litigation, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D. Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards in class-action lawsuits); In re Medical X-Ray Film Antitrust Litigation, CV-93-5904, 1998 U.S. Dist. LEXIS 14888 at *21 (E.D.N.Y. Aug. 7, 1998) (awarding a fee of $13 million, which represented one-third of the settlement); In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); City National Bank v. American Com. Financial Corp., 657 F. Supp. 817 (W.D.N.C. 1987); In re Franklin Nat'l Bank, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,571 (E.D.N.Y. 1980) (34% of settlement fund); Hwang v. Smith Corona Corp., B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); Chalverus v. Pegasystems, Inc., C.A. No. 97-12570-WGY (December 19, 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); In re Peritus Software Services, Inc. Sec. Litig., C.A. No. 98-10578-WGY (February 28, 2000); In re Copley Pharmaceutical, Inc. Sec. Litig., C.A. No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (awarding one-third of a $6.3 million settlement fund); Morton v. Kurzweil Applied Intelligence, Inc., C.A. No. 10829-REK (D. Mass. Feb. 4, 1998); In re Gillette Securities Litigation,  C. A. No. 88-1858-REK (D. Mass. Mar. 30, 1994); Wilensky v. Digital Equipment Corporation, C.A. No. 94-10752-JLT (D. Mass. July 11, 2000); In re Picturetel Corporation Sec. Litig., C.A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); Zeid v. Open Environment Corp., C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) (awarding a fee of one-third of a $6 million settlement).

F.3d 712, 718 (7th Cir. 2001) for evaluating the reasonableness of an award of attorneys' fees as part of a class action settlement.  Under this method, described as the "market mimicking" approach, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."  Id. quoting In re Synthroid Mkt. Litig., 264 F.3d at 718.  In Nilsen, this Court applied the following factors in assessing the appropriate award of fees to class counsel: (1) the use of standard contingency fee agreements and (2) awards in other, similar cases.  Id. at 279-82.  Applying the Nilsen reasoning to the proposed settlement here supports a conclusion that the requested one-third attorneys' fee award is reasonable.

### A.  The Contingency Fee Agreements

In September 2012, after class certification was granted, Class Counsel filed with this Court copies of 48 fee agreements, representing over one-third of the class, between the law firm of Lichten & Liss-Riordan, P.C. and members of the certified class, including the named plaintiffs who were appointed as class representatives.  See Docket No. 150, 152.  The basic terms of these agreements provide that Class Counsel shall be entitled, in the case of settlement and pending Court approval pursuant to F.R.C.P. 23(e), to one-third of any recovery obtained on behalf of the class.  In the case of judgment, counsel shall submit a fee petition to the Court and will reduce its one-third portion by any amount of attorney fees and costs awarded to Class Counsel by the Court, thus reducing the amount of attorney fees paid out of the judgment.  The contingency fee agreements state that the law firm is responsible for bearing all up-front costs of the litigation.  The agreements specifically provide that in no event shall Lichten & Liss-Riordan, P.C. be entitled to payment of attorney fees by class members if the law firm's efforts do not ultimately result in monetary recovery.

At the time these retainers were signed, Plaintiffs' counsel was taking a substantial risk by agreeing to pursue a class action with no assurance that they would recover any fees, a factor that supports the requested award.  See Nilsen, 400 F. Supp. 2d at 278 (noting that the "market mimicking" approach is intended to account for the risk class counsel assumes of receiving no payment at all for the work performed).[11]  Indeed the related MDL litigation was a disaster for plaintiffs, and this case nearly got folded into the MDL but for Class Counsel's work on this issue before the MDL panel. See Docket No. 8.   The agreements themselves explicitly stated that counsel would seek to pursue the case on a class action basis and the clients agreed to serve as class representatives.  See Docket No. 152.  The agreements indicated that, in the event of a settlement, Class Counsel would be entitled to an award of fees equal to one-third of the recovery, pending Court approval.  Id.[12]  Moreover, as this Court has recognized, an award of one-third of the total recovery is standard in contingency fee cases.  See Nilsen, 400 F. Supp.2d at 279.  These facts support the requested award as consistent with an award that the market

---

[11]     The risk of no recovery is significant for class action plaintiffs' attorneys.  Class Counsel has spent years litigating other cases on behalf of workers without compensation—and, indeed, at considerable expense.  As an example, Plaintiffs' counsel spent five years litigating the skycaps tips case against American Airlines, which they successfully tried to a jury in federal court and succeeded in getting the verdict affirmed by the Supreme Judicial Court, see DiFiore v. American Airlines, Inc., 454 Mass. 486 (2009), only to have the verdict reversed by the First Circuit based on a federal preemption issue, see DiFiore v. American Airlines, Inc., 646 F.3d at 81 (1st Cir. 2011).  With that reversal, hundreds of thousands of dollars of fees were lost, and thousands of hours of attorney work went unpaid.

[12]     By honoring reasonable contingency fee agreements, such as the one signed by over one-third of the class here, the courts permit clients to obtain attorneys without having to pay hourly fees, encouraging a system that provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.  See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").  That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case.  It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." Reiter v. Sonotone Corp., 442 U.S. 330, 344 (1979) (addressing anti-trust laws).  This reasoning applies with equal force to wage and hour claims.  See Skirchak v. Dynamics Research Corp., Inc., 432 F. Supp. 2d 175, 179 (D. Mass. 2006) ("Allowing private attorneys to prosecute [wage] actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims"), aff'd 508 F.3d 49 (1st Cir. 2007).

might produce, particularly given the number of class members who signed agreements providing for a one-third recovery by Class Counsel.  See id.

### B.  Awards in Other Cases.

This Court has indicated it will consider the attorneys' fee awards in similar class actions in evaluating the reasonableness of the requested award.  In addition to the cases cited in footnote 13, supra, it is common for Courts to approve an award of attorneys' fees equal to one-third of the common fund in wage and hour class action settlements.  See Matamoros v. Starbucks, C.A. No. 08-10772 (D. Mass. filed May 7, 2008), Docket Nos. 159, 169 (settlement of claims under state wage law); Crenshaw v. Texas Roadhouse, Inc., et al., C.A. No. 11-10549-JLT (D. Mass. filed April 5, 2011), Docket Nos. 53, 56 (same); Cutter v. HealthMarkets, Inc., et al., C.A. No. 10-11488-JLT (D. Mass. filed July 2, 2010) (settlement of claims for unlawful misclassification under state law and denial of wages), Docket Nos. 77, 80; Kiely v. TripAdvisor LLC, C.A. No. 08-11284-MLW (D. Mass. filed July 2, 2008) (settlement of claims for unlawful misclassification under state law and denial of wages), Docket Nos. 51 and 52;  Rascon v. FedEx Ground, C.A. No. 2008CV7626 (Denver District Court, Mar. 25, 2013) (Order Approving Settlement and Fees attached hereto as Exhibit B).  These awards in similar cases also support the conclusion that the requested award of one-third is reasonable under this Court's "market mimicking" approach.  See Nilsen, 400 F. Supp. 2d at 281.

### C.  Other Considerations That Support the Requested Award.

Here, Class Counsel has litigated this case for well over three years, and has achieved a significant result for the plaintiff class.  This case is an employment class action, which differs in a number of important respects from consumer and antitrust class actions, with which the Court may be more familiar.  First, the settlement is for a discrete group of class members, 141 people,

whose names and last known addresses have been provided by Defendant.  As a result, the final

claims rate is expected to be much higher than in other cases, such as a typical consumer class

action where the class members are harder to reach.  Second, as an employment class action

settlement, the amounts recovered by each class member are substantial, with all but seven class

member entitled to more than $1,000 and nearly half the class receiving amounts of more than

$25,000 (even after the deduction of attorneys' fees).  Third, as explained above, this proposed

settlement contemplates that *all* of the settlement proceeds will be distributed to class members

or their counsel, with no residual amounts being returned to Defendants.  Finally, and

significantly, Class Counsel will conduct the administration of the settlement themselves.  This

in-house administration will not only take significant time and resources of the firm, but it will

also save the class tens of thousands of dollars that is often spent on a third party administrator.

Moreover, even though the lodestar method is not preferred, a lodestar analysis in this

case further demonstrates that the proposed award for fees and costs is fair and reasonable.  See

Compact Disc, 216 F.R.D. at 215-16 ("loadstar approach … can be a check or validation of the

appropriateness of the percentage of funds fee, but is not required."); Conley v. Sears, Roebuck

& Co., 222 B.R. 181, 187 (D. Mass. 1998) (noting that lodestar method can be used to

"doublecheck" the reasonableness of a fee).  Including the hours that are expected to be spent on

administration of the settlement, Class Counsel expects that they will have spent more than 1,520

hours on this case.  Declaration of Harold L. Lichten, attached hereto as Exhibit C, ¶ 9; see In re

Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306-07 (3d Cir. 2005) (lodestar multiplier "need not

fall within any pre-defined range"; court need not engage in this analysis with "mathematical

precision" or "bean-counting" and may rely on summaries of hours submitted by the attorneys

(as opposed to actual billing records)).  The law firm of Lichten & Liss-Riordan has already

spent 1,386 hours in attorney time on this case, and the Law Office of Donald F. Fontaine has spent approximately 81.4 hours and his paralegal has spent 21.8 hours. Lichten Decl., ¶¶ 4, 6. Moreover, based on extensive past experience, Class Counsel anticipates spending another 30 hours in the administration of the class settlement, and that the costs associated with the administration will be approximately $3,500. Id., ¶¶ 8-9. Moreover, Plaintiffs' counsel has already expended close to $50,000 in costs in connection with the litigation. Id., ¶ 7.

Even putting aside the expenses that class counsel are paying out of the fee award, the award of $1,931,400 constitutes a lodestar multiplier of 4.13,[13] which is far lower than those approved by courts in many other cases. See, e.g., Conley v. Sears, Roebuck & Co., 222 B.R. 181 (approving lodestar multiplier of 8.9, even where plaintiffs' counsel were "piggybacking" on prior success by another plaintiffs' firm in a different case).[14] This case is in stark contrast, in that Plaintiffs' counsel's own work on other cases paved the way for this settlement. Accordingly, the fact that the one-third fee award would constitute a lodestar multiplier of 4.13 further supports approving the fee award.

For these reasons, and given this precedent approving one-third recovery for attorneys' fees in class action cases just like this one, the Court should award the requested one-third recovery here.

---

[13]   As described in the attached declaration of Attorney Harold L. Lichten, Class Counsel have spent over 1,485 hours litigating this case and incurred a total of $467,219 in legal fees. Lichten Decl., ¶¶ 5, 6. When the requested fee award of $1,931,400 is divided by $467,219, it results in a multiplier of 4.13.

[14]   This Court has previously held that, under both Supreme Court and First Circuit precedent, a district court evaluating an award of attorneys' fees as part of a class action settlement is permitted to award a reasonable percentage of the common fund "even if the fee effectively represents a multiplier of the lodestar amount." Nilsen v. York Cnty., 400 F. Supp. 2d 266, 272-73 (D. Me. 2005) (Hornby, J.).

VI.  **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court grant final approval of the Settlement and the proposed Plan of Distribution as fair, reasonable, and adequate.  Plaintiffs further request that the Court approve the requested attorneys' fees award and the proposed incentive awards to named and opt-in plaintiffs.

Respectfully Submitted,
WAYNE SCOVIL, CHRISTY PARSONS, KELLEY NYLUND, CLARENCE MCMULLEN, JR., BRENT BAILEY, HENRY SMITH, DUANE HUMPHREY, and WILLIAM PREBLE, individually and on behalf of all others similarly situated, **Plaintiffs**

By their attorneys,


  /s/ Harold L. Lichten
Harold L. Lichten, Maine Bar #1559
Shannon Liss-Riordan
Sara Smolik
Lichten & Liss-Riordan, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994.5800


  /s/ Donald F. Fontaine
Donald F. Fontaine Maine Bar #424
The Law Office of Donald Fontaine
97 India Street, P.O. Box 7590
Portland, ME 04112
(207) 879.1300

Dated:    January 27, 2014

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 27, 2014, a copy of this document was electronically filed through the Court's CM/ECF system and a copy served, through that system, on all counsel of record.

  /s/ Sara Smolik_____
Sara Smolik, Esq.