# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

WAYNE SCOVIL, ET AL.,       )
                                 )
             PLAINTIFFS    )
                                 )
v.                               )        No. 1:10-CV-515-DBH
                                 )
FEDEX GROUND PACKAGE   )
SYSTEM, INC. *d/b/a FedEx*   )
*Home Delivery*,              )
                                 )
             DEFENDANT    )

## DECISION AND ORDER ON PROPOSED REVISED
## SETTLEMENT AGREEMENT AND ATTORNEY FEES

### I. SUMMARY

Drivers for FedEx Ground Package System, Inc. (FXG) in Maine have sued FXG. They complain that FXG failed to pay them overtime and made improper pay deductions under Maine law, and that it committed overtime violations under federal law, namely, the Fair Labor Standards Act (FLSA). The Maine law claims are an opt-out class action; the FLSA claim is an opt-in collective action. Now I have been asked to approve the settlement of both the class action and the collective action and a request for attorney fees as well. Mot. for Final Approval of Class Action Settlement (ECF No. 269).

The proposed settlement differs from the typical class action settlement in this court in several ways.

1.    After the parties initially proposed the settlement and I conducted a preliminary hearing on it, class counsel unexpectedly informed me "that the

parties are not able to reach a settlement at this time. Plaintiffs will await the Court's ruling on the pending [summary judgment] motions." Pls.' Letter to Judge Concerning Status of Proposed Settlement (ECF No. 250). Next, FXG asked for a status conference, (ECF No. 251), and I conducted such a conference. At that conference, I informed counsel that the Clerk's Office had received phone calls from a named plaintiff and other class members complaining about the settlement. In addition to hearing from the lawyers and two class members who were in the courtroom, I reminded counsel that "as class counsel, understanding your obligations to the class as opposed to the named plaintiffs, you have to tell the Court whether you believe that it's a fair and a reasonable settlement agreement for the class. If you do, and if you have a named plaintiff willing to sign, then I would go forward to a fairness hearing. I may or may not decide ultimately that it is fair. But I would have—I think I would go forward that way, and your named plaintiffs who disagreed could opt out or they could object." Tr. of October 21, 2013, Status Conference at 33 (ECF No. 256). After the settlement agreement was further revised, two named plaintiffs signed it and five refused to sign. Class counsel now is supporting the settlement as fair, reasonable and adequate.

2.     Notice has been unusually successful, reaching 138 of the class of 141 drivers.

3.     Class members will receive substantial amounts under the settlement.

4.     Nevertheless, 13 class members have objected, 4 of them named plaintiffs and class representatives, saying that FXG should pay far more in settlement.

5.     The proposed incentive payments (now called service payments by some courts), although reduced from the first proposal, are still more generous than I am used to.

After conducting a fairness hearing on February 24, 2014, as Federal Rule of Civil Procedure 23(e) requires, I conclude that the settlement is fair, reasonable and adequate (the class action standard), that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" (the collective action standard), Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the incentive awards are reasonable.  I also approve the requested attorney fees.

## II. CLASS ACTION SETTLEMENT

### *Settlement and Plan of Distribution*

According to Rule 23(e), the "following procedures apply to a proposed settlement":

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e). Here, class members have received reasonable notice of the settlement; there has been a hearing; there are no side agreements; with notice of the settlement, class members received a new opportunity to opt out (none did so); 13 class members filed written objections; 2 of them appeared and spoke at the hearing, and one additional class member objected at the hearing without filing a written objection; no objections were withdrawn. What remains, then, is for me to determine whether the settlement is "fair, reasonable, and adequate."

The First Circuit has stated that "Rule 23's reasonableness standard has been given substance by case law offering laundry lists of factors, most of them intuitively obvious and dependent largely on variables that are hard to quantify; usually, the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." National Ass'n of Chain Drug Stores v. New England Carpenters, 582 F.3d 30, 44 (1st Cir. 2009). With no firmer guidance, I have used the following factors to assess a class settlement: (1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense

and duration.[1] <u>In re New Motor Vehicles Canadian Export Antitrust Litigation</u>, 2011 WL 1398485, *2 & n.16 (D. Me. April 134, 2011) (citing additional sources).

     1.    *Proposed Settlement Compared to Likely Trial Outcome.*  Although the parties have avoided putting the total value of the settlement in their papers, simple arithmetic reveals that after rounding it totals approximately $5.8 million including attorney fees, and that was confirmed at the fairness hearing. For administrative reasons, record-keeping reasons, and the passage of time, the plan for distributing the funds does not involve calculations of hours, deductions and expenses for each individual class member. Instead, it awards a fixed amount per week for each week worked during the class period from December 16, 2004, to December 16, 2010. The parties have also agreed that there should be a premium based upon length of service (17 levels ranging from $174.15 per week for longest service to $100 per week for shortest service) because the length of service is associated with greater expenses in truck purchases, maintenance, hiring, etc. No one has objected to either the premium or the gradations. Not counting certain class members' incentive payments, individual class members' recoveries will range from about $55,000 (26 class members) to $214 (1 class member) (ECF No. 260-2). Nearly half the class members will receive payments over $25,000. Those are substantial

---

[1] First Circuit caselaw says that a settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair, <u>see</u> <u>City Partnership Co. v. Atlantic Acquisition Ltd.</u> <u>Partnership.</u>, 100 F.3d 1041, 1043 (1st Cir. 1996); <u>see also</u> <u>Adoma v. University of Phoenix,</u> <u>Inc.</u>, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012), but as I observed in Canadian Cars, that presumption is heavily criticized and I find no reason to use it here. <u>See</u> Principles of Aggregate Litigation § 3.05(c) and cmt. c (critique of presumption of fairness).

numbers, although far less than some drivers want.  If the class went to trial, on the other hand, won on all the claims, and survived appeal and/or certification to the Maine Supreme Court, the amount recovered could be around $10 million.  Tr. Final Fairness Hrg. at 11-12.  In addition, the class could obtain attorney fees by statute, assessed under a lodestar calculation (although arguably individual class members who signed contingent fee agreements would have to pay more to the lawyers).  <u>Venegas v. Mitchell</u>, 495 U.S. 82 (1990).  The class might also receive double damages under state and federal law.  26 M.R.S.A. § 670; 29 U.S.C. § 216.  Later, I will discuss how this larger amount should be discounted for risk, delay and expense and whether it is "likely."

2.  *Class Reaction.*  The response to the settlement has been generally positive.  No one has opted out.  That is significant, because the claims here are not small-dollar recoveries like many consumer class actions and because both state and federal law allow a successful plaintiff on these wage-and-hour claims to recover attorney fees and costs and perhaps double damages from FXG.  Unlike in many class actions, then, there was no barrier to an unhappy driver proceeding to sue on his or her own if the case had substantial merit.  But I recognize that 13[2] of 141 plaintiffs (9.2%) did file objections, and 4 of them were named class representatives (2 other class representatives signed the agreement).  That too is significant.  Three objectors spoke at the hearing.

---

[2] One of the 13 is not really an objection, just a request that the court exercise its own judgment.  Objection of Charles Hamel (ECF No. 279).  The objectors' recoveries range from $13,000 to $55,000, not including incentive payments.  Objections with Proposed Settlement Chart (ECF No. 282-4).

None of the objectors attacked the distribution formula or the attorney fees or the amount of the proposed incentive awards. The objections all are based upon the proposition that FXG is not paying enough, given the number of hours of overtime and the amount of paycheck deductions and expenses, and some objectors believe that incentive payments were designed to persuade reluctant class representatives to approve the agreement. However, none of the objectors has offered any basis to believe that FXG is willing to pay more than the $5.8 million or that the risks that I will describe later justify the class representatives rejecting the settlement and proceeding farther down the litigation road.

It is somewhat unusual for class representatives to object to a settlement agreement that is presented for court approval, but it is not a dispositive factor:

> [A] class representative cannot alone veto a settlement, especially one that has been presented to and approved by the court. If the judge concludes that class representatives have placed individual interests ahead of the class's and impeded a settlement that is advantageous to the class as a whole, the judge should take appropriate action, such as notifying the class of the proposed settlement or removing the class representatives, or both.

Complex Litigation Manual (Fourth) § 21.642 (2004). See Lazy Oil Co. v. Witco Corp., 166 F.3d 581 (3d Cir. 1999); Parker v. Anderson, 667 F.2d 1204, 1211 (5th Cir. 1982) ("the named plaintiffs should not be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and adequate settlement in order to secure their individual demands"); Kincade v. General Tire and Rubber Co., 635 F.2d 501, 508 (5th Cir. 1981); Tardiff v. Knox Cnty,

567 F.Supp.2d 201, 209-10 (D. Me. 2008); <u>Maywalt v. Parker & Parsley Petroleum Co.</u>, 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994).]

3. *Stage of Litigation.* This case now has been pending for more than three years. There have been numerous hotly contested motions that required written rulings; liability discovery has been completed (upon request, I bifurcated liability and damages in the case); class certification was ordered and collective action decertification was denied; cross-motions for summary judgment on liability have been filed and briefed. I was close to ruling on those summary judgment motions when the parties asked me to withhold ruling because settlement seemed likely. They proceeded to mediation before a retired Maine Supreme Court Chief Justice. That mediation provoked an offer from FXG that the plaintiffs rejected, and mediation was deemed unsuccessful. But thereafter the parties agreed on a settlement that is about 20% higher. Damages discovery is not complete, but the class members and class counsel know what they believe the overtime and improper deductions and expenses amount to.[3]

4. *Quality of Counsel and of Representation.* The plaintiffs' lawyers are very well-qualified and experienced for this litigation. Lead counsel, Harold

---

[3] The objectors say that FXG is grossly under-estimating the number of hours of overtime and that it is unreasonable for FXG to rely on so-called scanner data (the time at which the drivers started using their scanners in the morning and the time that they stopped using them in the evening) because drivers kept that interval smaller than actual hours worked so as to avoid problems with federal limits on how long they could drive. They seem to think that these numbers (unreasonable in their view) have driven the settlement. Class counsel assured them and the Court that he does not accept FXG's numbers. But it certainly could be effective cross-examination before the jury that the class members' longer hour claims are inconsistent with what the drivers contemporaneously recorded by scanner when they were subject to legal requirements to log their hours accurately.

Lichten, has represented numerous individuals alleging misclassification and failure to pay wages and other benefits in individual and class actions across the country.[4] Most significantly, the law firm of Lichten & Liss-Riordan represented classes of FXG drivers in Connecticut, Massachusetts and Vermont in suits alleging nearly identical claims. Schwann v. FedEx Ground Package Sys., Inc., No. 11-11094-RGS (D. Mass. filed July 17, 2011); Magno v. FedEx, C.A. No. 3:07-cv-00811-JCH (D. Conn. filed May 22, 2007); Gruhn v. FedEx, C.A. No. 3:07-cv-00412-RLM (D. Vt. filed July 25, 2007); Sheehan v. FedEx, C.A. No. 1:05-cv-10936-RGS (D. Mass. filed May 6, 2005).[5]

I observed the lawyers' performance in written arguments, in numerous in-person appearances and by telephone conference. It was of uniformly high quality and demonstrated zealousness in advancing the drivers' cause.

5. *Conduct of Negotiations*. The case was hard fought on every issue until settlement emerged. As I have said, the parties engaged in mediation before a retired Maine Supreme Court Chief Justice. Although they were not able to reach agreement in that session, they asked that I hold off ruling on the

---

[4] He has litigated a significant number of delivery driver/independent contractor cases specifically. See, e.g., Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013) (representing class of misclassified cable installers seeking unpaid wages); Anderson v. Homedeliveryamerica.com, Inc., No. 11-10313, 2013 WL 6860745 (D. Mass. Dec. 30, 2013) (class of delivery drivers were employees under Massachusetts law); Martins v. 3PD, Inc., No. 11-11313-DPW, 2013 WL 1320454 (D. Mass. Mar. 28, 2013) (same); Somers v. Converged Access, Inc., 911 N.E. 2d 739 (Mass. 2009) (where the SJC explained the strict nature of the Massachusetts independent contractor statute).

[5] I note that the related MDL litigation was a misadventure for plaintiffs, and this case nearly got folded into the MDL but for class counsel's work on this issue before the MDL panel. Order Vacating Conditional Transfer Order (ECF No. 8). If litigated in the MDL, this case might have taken an exceptionally long time to resolve. The lead MDL case from Kansas was filed nearly a decade ago. After the class was certified in 2007 and summary judgment entered for FedEx in 2012, the drivers appealed. That same year, the Seventh Circuit certified the question of the drivers' employment status to the Kansas Supreme Court, where the case still sits and the nearly 500-person class awaits a resolution of their claims. See Craig v. FedEx Ground Package Sys., Inc., 686 F.3d 423, 431 (7th Cir. 2012).

summary judgment motions while they continued to negotiate for a period of almost two weeks. Status Report Regarding Mediation (ECF No. 232). From all that I have personally observed in the case, I am satisfied that the negotiations were at arm's length. Some of the plaintiffs who have objected have suggested collusion between the attorneys, but they have absolutely no basis for the suggestion except a reference to respective counsel playing against one another on a Massachusetts lawyers basketball teams many years ago. I am satisfied that there is no support for any such accusation.

6. *Case Prospects, Including Risk, Complexity, Expense and Duration.* This factor, coupled with the dollar amount and distribution plan, is the heart of whether the settlement is fair, reasonable and adequate. This case was never a slam-dunk win for the FXG drivers. The basic issue is whether they were employees or independent contractors. The cases nationally on that issue are divided. See, e.g., Wells v. FedEx Ground Package Sys., Inc., 2013 WL 5435484 (E.D. Mo. Sept. 27, 2013) (drivers were employees under Missouri law); Schwann v. FedEx Ground, 2013 WL 3353776 (July 3, 2013) (holding FedEx drivers were employees under Massachusetts law); In re FedEx Ground Package Sys., Inc., 869 F. Supp. 2d 942, 989 (N.D. Ind. 2012) (drivers were independent contractors under Kansas law); FedEx Home Delivery v. N.L.R.B., 563 F.3d 492, 502 (D.C. Cir. 2009) (drivers were independent contractors for purposes of the National Labor Relations Act). FXG has won on the merits of that issue in a number of jurisdictions, and it is a difficult question under Maine law, as was apparent in my analysis whether the case could proceed as a class action. That same issue now is the major focus of the cross-motions for

summary judgment.  If the plaintiffs lose and the defendants win on summary judgment, certainly a possibility—the MDL judge ruled in FXG's favor on this issue for so-called "hybrid" states (referring to their independent contractor treatment) arguably like Maine, In re FedEx Ground Package Sys., Inc., 734 F. Supp. 2d 557 (N.D. Ind. 2010); In re FedEx Ground Package Sys., Inc., 758 F. Supp. 2d 638 (N.D. Ind. 2010)—then the case is over, with the class receiving nothing.  If both sides lose the cross-motions, then a jury will have to decide that issue (and the Maine law deduction and expense issues) and the outcome before a jury is highly uncertain.[6]  A trial will be lengthy and tedious.  There will be difficult proof issues concerning the amount of overtime, which varied week to week, and concerning the proper base pay rate and overtime rate, given the fluctuating work week that the drivers worked.[7]  The Maine law on pay check deductions, 26 M.R.S.A. § 629, is undeveloped.  Among other things, the available remedies are uncertain.  See Cooper v. Springfield Terminal Ry. Co., 635 A.2d 952, 955 (Me. 1993) (appearing to disagree *sub silentio* with the First Circuit's ruling in Beckwith v. United Parcel Serv., Inc., 889 F.2d 344 (1st Cir. 1989) that liquidated damages and attorney fees are not available, yet citing the Beckwith decision favorably on some issues).  There are no cases developing the coverage of the statute and no cases holding that it can include expenses that the drivers themselves shouldered.  The Massachusetts federal

---

[6] In the state of Washington, FXG won a jury verdict.  Anfinson v. FedEx Ground Package Sys., Inc., 244 P.3d 32 (Wash. Ct. App. 2010).  The case now has been remanded because of a faulty jury instruction, but the jury verdict shows the risk of litigation.

The uncertainty also discounts the value of double damages and attorney fees.

[7] Under federal regulations, when fluctuating work weeks are involved overtime is paid at half, not time-and-a-half.  See O'Brien v. Town of Agawam, 350 F.3d 279, 286-88 and n.16 (1st Cir. 2003).

court has found the question sufficiently uncertain under Massachusetts law to certify the question to the Massachusetts Supreme Court. Schwann v. FedEx Ground Package Sys., Inc., Civil No. 11-11094, 2014 WL 496882 (D. Mass. Feb. 7, 2014). The federal court in Kentucky threw out most such claims under the Kentucky statute (except for "cargo fees," a small dollar item). Moreover, if the plaintiffs were to succeed at trial, undoubtedly there would be an appeal and/or perhaps a certification of the Maine law issue to the Maine Law Court. FXG would also be able to challenge the class certification and the collective action certification. Class certifications have become increasingly subject to appellate challenge as a result of recent Supreme Court decisions. And there is an emerging issue on whether federal law concerning transportation may preempt other laws at issue here. Actual payments to the drivers, if they occur, would be some years away.

After considering all these factors, I conclude that the proposed settlement, which is clearly a compromise that discounts to some degree that drivers' total claims, is nevertheless fair, reasonable and adequate. These concrete dollar numbers to be received now are a fair trade-off for the uncertainties of trial and appeal and a prolonged delay in receiving any money. I also find that the plan of distribution is fair, reasonable and adequate in minimizing the administrative costs of calculating each driver's recovery individually given the passage of time and lack of record-keeping, and also in reflecting the added damages that come with years of service.

Rule 23(h) governs attorney fees in class actions. It provides that a court may award reasonable attorney fees and costs, that a class member or a party may object to an attorney fee request, that a court may hold a hearing, and that a court "must find the facts and state its legal conclusions under Rule 52(a)." Fed. R. Civ. P. 23(h). The plaintiffs have requested a total attorney fee and costs award of $1,931,400.00, one-third of the amount FXG is paying to settle the case. Pls.' Mot. for Approval of Class Action Settlement at 19 (ECF No. 269). I held a hearing and no one objected to the attorney fee request. Now I proceed to the remainder of the requirements: findings of fact and conclusions of law on whether the request is reasonable.

In a settled class action, the First Circuit does not require me to use a lodestar analysis, but allows a percentage-of-funds approach to assessment of attorney fees, In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir.1995), and I follow that approach here. In Nilsen v. York County, 400 F.Supp.2d 266 (D. Me. 2005), I endorsed the Seventh Circuit's market-mimicking approach to determine what is a reasonable fee for such cases, and I likewise follow that approach here.

I find that 48 of the class members (more than one-third) actually engaged this law firm to represent them and in fact signed contingent fee agreements providing that individually they would pay one-third of the

recovery.[8] That is one signal of what the market rate is. Moreover, as in Nilsen, I take judicial notice that contingent fees of one-third are common, another signal of the market. Finally, I observe that such a fee is consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts, still another market signal. See Matamoros v. Starbucks, Civil No. 08-10772-NMG (ECF Nos. 159, 169) (D. Mass. filed May 7, 2008) (settlement of claims under state wage law); Crenshaw v. Texas Roadhouse, Inc., et al., Civil No. 11-10549-JLT (ECF Nos. 53, 56) (D. Mass. filed Mar. 31, 2011) (same); Cutter v. HealthMarkets, Inc., et al., Civil No. 10-11488-JLT (ECF Nos. 77, 80) (D. Mass. filed Aug. 31, 2010) (settlement of claims for unlawful misclassification under state law and denial of wages); Kiely v. TripAdvisor LLC, Civil No. 08-11284-MLW (ECF Nos. 51, 52) (D. Mass. filed July 28, 2008) (settlement of claims for unlawful misclassification under state law and denial of wages). I conclude therefore that a one-third contingent fee satisfies the market-mimicking approach, and is reasonable. In this case, moreover, the plaintiffs' attorneys have undertaken all the administrative responsibilities of class action notice and distribution of the settlement proceeds. Often a third party performs notice and distribution at a substantial additional administrative cost that reduces the settlement funds available to the class members. That did not occur here. Since the one-third award here is not just fees but includes all costs and expenses, and since there are no additional administrative fees, I find that the requested award is reasonable.

---

[8] At my request, class counsel filed with the court under seal the signed agreements the firm had with 48 class members (about one-third of the class). Retainer Agreements (ECF No. 152).

### *Incentive or Service Awards*

Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit.  Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).  Moreover, class counsel may need the support and assistance of other class members who are not named plaintiffs.  In determining whether an incentive or service award is warranted, courts consider the steps these individuals have taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort they have expended in pursuing the litigation, id., and any negative effects that they have risked.

A 2006 study of incentive awards during 1993-2002 (374 cases) found that the median incentive payment then was $4,357, and the average $15,992.  Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L.Rev. 1303, 1308 (2006).[9]  The 2006 study, however, recognized that awards in employment discrimination cases are higher.  Id. at 1308.  Recent cases reflect that distinction in not only

---

[9] See also Thomas E. Willging, Laural L. Hooper, & Robert J. Niemic, Fed. Judicial Ctr., Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules (1996); Sherrie R. Savett, et al., Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs, 936 PLI/Corp. 321 at 340 (1996) (citing 52 cases involving incentive awards payments and noting that the normal range of such awards is $1,000 to $5,000).  In the Federal Judicial Center study of four district courts—the Eastern District of Pennsylvania, the Southern District of Florida, the Northern District of Illinois, and the Northern District of California—the authors found that incentive awards were granted in 26, 46, 40, and 37 percent of the cases, respectively.  Id.  The median amounts of all awards to class representatives ranged from $7,500 in two districts to $17,000 in the Northern District of California.  Id. at 26.  The median award per representative in three courts was under $3,000 and was $7,560 in the Northern District of California.  Id. at 8.

employment discrimination cases but also in wage and hour cases, where recently awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher. <u>Cook,</u> 142 F.3d at 1016 ($25,000 incentive award approved for one named plaintiff; total settlement was for $14 million plus structural changes to the pension fund); <u>Massiah v. MetroPlus Health Plan, Inc.,</u> No. 11-cv-05669(BMC), 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (approving service awards of $5,000 each to two plaintiffs, noting that "[s]uch service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs"); <u>Toure v. Amerigroup Corp.,</u> No. 10-Civ-5391(RLM), 2012 WL 3240461, at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); <u>Simmons v. Enterprise Holdings, Inc.,</u> No. 4:10CV00625AGF, 2012 WL 2885919, *2 (E.D. Mo. July 13, 2012) (approving "payment of individual incentive awards to the named Plaintiffs in the amount of $6,000.00 as set forth in the Settlement Agreement for their services as class representatives and as consideration for providing a general release"); <u>McKenzie v. Federal Exp. Corp.,</u> No. 10-CV-02420 GAF, 2012 WL 2930201, *11 (C.D. Cal. July 2, 2012) ($5,000 service award to one plaintiff); <u>Sewell v. Bovis Lend Lease, Inc.,</u> No. 09-Civ-6548(RLE), 2012 WL 1320124, at *14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); <u>Reyes v. Altamarea Group, LLC,</u> No. 10-cv-6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to three class

representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); Willix v. Healthfirst, Inc., No. 07-cv-1143(ENV)(RER), 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500); Chu v. Wells Fargo Investments, LLC, Nos. 05-4526 MHP, 06-7924 MHP, 2011 WL 672645, *5 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 to two plaintiff representatives involved in case for five years and $4,000 to three representative plaintiffs participating in case for two years, from a $6.9 million settlement fund); Torres v. Gristede's Operating Corp., Nos. 04-cv-3316, 08-cv-8531, 08-cv-9627, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); Khait v. Whirlpool Corp., No. 06-cv-6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); In re Janney Montgomery Scott LLC Fin. Consultant Litig., No. 06-3202, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) (approving $20,000 payments to three named plaintiffs in complex FLSA); Hopson v. Hanesbrands Inc., No. CV-08-0844, 2009 WL 928133, *10 (N.D. Cal. April 3, 2009) (approving $5,000 payment to plaintiff in wage and hour case). The reason commonly given for the higher awards in these cases is the fear and risk of retaliation and embarrassment in the workplace, on top of the time and administrative commitment that is commonly shared in all cases, employment or not.

The proposed incentive payments in this case are $20,000 for Wayne Scovil; $15,000 each for Brent Bailey, Duane Humphrey, Clarence McMullen, Kelley Nylund, Christy Parsons, and Henry Smith; and $10,000 each for

Anthony Esposito and James Maffei, for a grand total of $130,000. No class member objected to the amounts of the awards. Although Scovil, McMullen, Nylund and Esposito all objected to the settlement, that does not disqualify them for an award if they performed exceptional service and if they made their objections in good faith based upon their judgment of the class's best interest. Class counsel has assured me that I should treat their actions as such, and I see no reason not to.

Wayne Scovil, for whom $20,000 is proposed, was the first plaintiff on the case to come forward and contact plaintiffs' counsel in November 2010 to pursue a claim. Decl. of Harold L. Lichten ¶ 3 (ECF No. 242-1). Since then, Scovil has been the primary point person for the group of plaintiffs and, later, the entire class. By way of summary, he has spent over 75 hours of his own time helping the attorneys with the case and working on behalf of the class members. See id. ¶ 13; Decl. of Wayne Scovil ¶¶ 7, 9 (ECF No. 242-2). Although he lives in Carmel, Maine, he has attended every court room hearing in Portland in this case, including: hearing on defendant's motion to dismiss (June 24, 2011); hearing on plaintiffs' motion for conditional certification (Sept. 2, 2011); hearing on class certification (July 19, 2012); and hearing on preliminary review of the proposed class settlement (Sept. 5, 2013). Lichten Decl. ¶ 8. Scovil attended the depositions of three of the four defense witnesses in this case, including a deposition held in Boston, MA. Id. ¶ 9. He attended his own deposition, produced nearly 4,000 pages of documents, and answered written interrogatories. Id. ¶¶ 10-11. He also provided declarations in support of the motions for conditional and class certification, which were filed with the

Court. Finally, he attended the day-long mediation held in Portland on August 7, 2013, id. ¶ 12, and he came to the fairness hearing and spoke. Although I am overruling his objections to the settlement and conclude that the settlement serves the class better than continuing to litigate, I conclude nevertheless that he has tried to act in what he in good faith considers the best interests of the class.

The six remaining named plaintiffs for whom $15,000 incentive payments are proposed—Parsons, Nylund, McMullen, Bailey, Smith and Humphrey—have been involved in the litigation since before the complaint's filing in December 2010. Lichten Decl. ¶ 4. At the time the complaint was filed, Bailey was still working for FXG as a delivery driver, pursuant to an Operating Agreement, and McMullen, Nylund and Smith were driving FXG routes as employees of contractors who had continued their relationship with FXG after the company's transition to a new work model. Id. ¶ 5. Like Scovil, these plaintiffs all were deposed, provided testimony about the relationship between FXG and its Maine drivers, produced documents (including personal tax returns, financial information, and evidence related to the expenses typically borne by FXG drivers), responded to written interrogatories, and participated in telephone conferences with counsel to assist with the case. Id. ¶¶ 3, 10-11. Bailey, Nylund and Smith provided declarations in support of the motion for the FLSA conditional certification. Bailey Decl. (ECF No. 25-6); Nylund Decl. (ECF No. 25-4); Smith Decl. (ECF No. 25-2). McMullen provided a declaration in support of the motion for class certification. McMullen Decl.

(ECF No. 96-3).  Finally, along with Scovil, Bailey and McMullen attended the day-long mediation.  Lichten Decl. ¶ 12.

Although not named plaintiffs, Maffei and Esposito, for whom $10,000 payments are proposed, were among the first individuals to affirmatively opt into this litigation.  Opt-in Consent Forms (ECF No. 21-1)[10]  Both volunteered to be deposed in the summer of 2011 and provided testimony about their work for FedEx.  Lichten Decl. ¶ 10.  Both responded to written discovery requests from FXG, produced documents and answered interrogatories.  Id. ¶ 11.  Both provided declarations in support of the motion for the FLSA conditional certification, attended all four of the courtroom hearings, and attended three of the four depositions of FXG managers, including traveling to Boston for one such deposition.  Lichten Decl. ¶¶ 8, 9.  Maffei also attended the day-long mediation.  Id. ¶ 12.  Maffei spent approximately 37 hours working on this case and Esposito approximately 35 hours.  Lichten Decl. ¶ 13.

I find that the proposed awards here are reasonable given the commitment and efforts of these individuals and the workplace risks and awkwardness they incurred in doing so.  I also observe that the incentive awards here do not create the hazards recognized in Rodriguez v. West Publishing Corp., 563 F.3d 948, 958-59 (9th Cir. 2009) and Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013), where prior agreements to pay incentives disqualified the class representatives.

---

[10] After discovery revealed that the vehicle he drove weighed more than 10,001 pounds, Esposito stipulated to the dismissal of his FLSA claim.  Joint Stipulation of Dismissal (ECF No. 206).

Here there were no prior agreements and, although some of the class representatives who are not content with the amount of the settlement viewed the incentive payments as designed to obtain their consent, it obviously did not have that effect, as they continued energetically to seek a higher settlement.

Therefore, I **APPROVE** the incentive awards, the settlement agreement and the plaintiffs' attorney fees under Rule 23.

### III. FLSA COLLECTIVE ACTION

The reasons for approving the class action settlement of the Maine claims support approving the collective action settlement of the FLSA claims as well. The review here is to ensure that the parties are compromising only a bona fide dispute over the application of the FLSA provisions. Lynn's Food Stores, 679 F.2d at 1355; Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 719-20 (E.D. La. 2008); Ellen C. Kerns, The Fair Labor Standards Act at 19-201, 19-203 (2010). That is certainly the case here. The factors to consider in assessing the settlement are essentially the same, see Kerns, The Fair Labor Standards Act at 19-203, as they are for the incentive awards and the attorney fee award under the FLSA. Id. at 19-204, 19-188-93.

### IV. CONCLUSION

Although I understand the objectors' desire for the class to obtain more money, I find no reasonable basis to conclude that they can obtain more money in settlement, and I find that there is a significant risk in their proceeding to trial. I **APPROVE** the settlement agreement and the attorney fees under both federal and state law and under both Fed. R. Civ. P. 23 and the FLSA.

By April 4, 2014, the parties shall prepare an agreed-to final judgment for entry on the Court's docket. It shall provide that, without affecting the finality of the judgment in any way, this Court retains and reserves jurisdiction over all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement including, but not limited to, any allocation and distribution of the settlement proceeds to Class Members. Class counsel shall report to the Court and opposing counsel by July 7, 2014, on the success of the distribution, whether any funds remain and, if so, how much.

**SO ORDERED.**

**DATED THIS 14TH DAY OF MARCH, 2014**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**